IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-2405
_____


LAURA PATRICIA CANAVATI DE CHECA, ET AL.,

                                        Plaintiffs-Appellants,

        versus

DIAGNOSTIC CENTER HOSPITAL, INC., ET AL.,

                                        Defendants,

ROBERT DAVIS, M.D., ET AL.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
(July 20, 1992)


Before WILLIAMS and WIENER, Circuit Judges, and LITTLE,[*] District
Judge.

PER CURIAM:

    CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR

    THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT

    TO THE TEXAS CONSTITUTION ART. 5 § 3-C AND TEX. R. APP.

    P. 114.

---

    [*] District Judge of the Western District of Louisiana, sitting
by designation.

TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:

The United States Court of Appeals for the Fifth Circuit finds that this case involves questions of Texas law that are determinative of the cause and for which we find neither dispositive statutory provision nor controlling precedents in the decisions of the Supreme Court of Texas or the intermediate appellate courts of Texas. We hereby certify two questions of law to the Supreme Court of Texas for instructions.

## I. STYLE OF THE CASE

The style of the case in which this certificate is made is <u>Laura Patricia Canavati De Checa, et al., Plaintiffs-Appellants v. Diagnostic Center Hospital, Inc., et al., Defendants, and Robert Davis, M.D., Gail Burbridge, M.D., and George Burnazian, M.D., Defendants-Appellees</u>, Case No. 91-2405, in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Southern District of Texas.

## II. STATEMENT OF FACTS

In this wrongful death action based on medical malpractice, plaintiffs/appellants ("Canavatis"), the surviving spouse and children of Robert Canavati, sued various health care facilities and physicians involved in the examination, diagnosis, and treatment of Mr. Canavati, pursuant to the Medical Liability and Insurance Improvement Act of Texas, Tex. Rev. Civ. Stat. Ann. art. 4590i (Vernon Supp. 1992), and the Wrongful Death and Survival

2

provisions of Texas law, Tex. Civ. Prac. & Rem. Code Ann. §§ 71.004 and 71.021 (Vernon 1986). Only the district court's orders concerning Drs. Burbridge, Davis, and Burnazian are at issue. By agreement of the parties, the district court bifurcated the case and set the statute of limitations issue for trial.

Based on the parties' briefs and stipulated facts, the district court granted summary judgment and dismissed the Canavatis' claims against Drs. Burbridge, Davis, and Burnazian on the ground that plaintiffs failed to file timely suit and notice under the Medical Liability and Insurance Improvement Act, Tex. Rev. Civ. Stat. Ann. art. 4590i, §§ 4.01(a) and (c) as well as 10.01 (Vernon Supp. 1992).

With the operative facts and dates not in dispute, the resolution of this appeal will turn on interpretation and application of the statutory sections.

Sec. 4.01(a):

Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.

. . .

Sec. 4.01(c):

Notice given as provided in this Act shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.

3

. . .

Sec. 10.01 (in relevant part):

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.

On this appeal, the parties do not contest the following: (1) the suit was not filed within the two years of the last date of treatment by Drs. Burbridge, Davis, and Burnazian; (2) no notice of claim letter was sent to the appellees within the two years of the last date of the treatment they administered; and (3) unless the statute of limitations is tolled, the Canavatis' claim is barred.

The crux of the Canavatis' claim is that the giving of timely notice to defendants Dr. Middleman, the Diagnostic Clinic of Houston, P.A. ("Clinic"), and the Diagnostic Center Hospital, Inc. ("Hospital"), within two years after the stipulated last day of treatment, pursuant to § 4.01(a), tolled for another 75 days the statute of limitations as to all potential parties, including Drs. Burbridge, Davis, and Burnazian, pursuant to § 4.01(c). During this 75-day extension, the Canavatis filed suit and gave notice to Drs. Burbridge, Davis, and Burnazian as required by § 4.01(a). But while the Canavatis gave the required notice to the appellees prior to filing suit against them, they did so only a matter of days before instituting their action, and only after the

4

two-year limitations period had expired.  The relevant dates that determine the applicable limitations period are undisputed.[1]

The appellees contend that § 4.01(c) operates to toll the two-year statute of limitations for 75 days only if a notice of claim letter is sent to each named defendant within the two-year limitations period.  Thus, if no notice is sent and no suit is filed against a named defendant within this two-year limitations period, as occurred in this case, the suit is time-barred.

---

[1]  The chronology is as follows:

| | |
|---|---|
| 5/20/86 | Mr. Canavati presents at Diagnostic Clinic |
| 6/25/86 | Last surgery by Dr. Burbridge |
| 8/09/86 | Last surgery by Dr. Davis |
| 9/10/86 | Mr. Canavati discharged from hospital |
| 9/14/86 | Mr. Canavati last seen by Dr. Burbridge in hospital emergency room |
| 9/10-25/86 | Mr. Canavati last seen by Dr. Davis |
| 9/25/86 | Mr. Canavati last seen by Dr. Burnazian |
| 10/01/86 | Mr. Canavati returns to Mexico |
| 1/1/87 | Death of Mr. Canavati |
| 4/18/88 | Notice sent to Dr. Middleman |
| 9/08/88 | Notice sent to Diagnostic Clinic and Diagnostic Hospital |
| 9/10-25/88 | Two years from last treatment |
| 11/10/88 | Notice sent to Drs. Davis and Burbridge |
| 11/14/88 | Notice sent to Dr. Burnazian |
| 11/18/88 | Lawsuit filed |
| 11/24/88 | Two years and 75 days from last treatment |

5

In setting forth their contentions, the parties rely on three reported cases that have reached divergent conclusions: Roberts v. Southwest Texas Methodist Hospital, 811 S.W.2d 141 (Tex. App.--San Antonio 1991, writ denied); Rhodes v. McCarron, 763 S.W.2d 518 (Tex. App.--Amarillo 1988, writ denied); and Maddux v. Halipoto, 742 S.W.2d 59 (Tex. App.--Houston [14th Dist.] 1987, no writ). The appellees rely primarily on Maddux, which held that notice to a hospital within the two-year period does not toll limitations as to a doctor the plaintiff subsequently chose to sue because § 4.01(a) requires notice "to each physician or health care provider." Because the plaintiff failed to send a notice of claim letter to the doctor within the two-year period, "the statute of limitations was not tolled." 742 S.W.2d at 61.

Another appellate court has addressed both § 4.01(a) and § 4.01(c) and reached a different result. In Rhodes, the plaintiff had sent timely notice to three defendant doctors. The court held that this entitled the plaintiff to an extra 75 days to sue a fourth doctor. According to Rhodes, "[the] notice of claims Rhodes sent to Dr. McCarron's three co-defendant doctors served to toll the two-year statute of limitations for a period of 75 days as to them and to Dr. McCarron, a potential party." 763 S.W.2d at 522.

In Roberts, the plaintiff sent timely notice of her claim to the physician, but failed to send notice to the hospital. Based on the statute of limitations and notice provisions found in §§ 10.01 and 4.01 (a) and (c), the court of appeals ruled that notice to one health care provider, the physician, tolled the limitations as to

6

the other, the hospital. In interpreting the two relevant parts, it found that: "The statute mandates notice to each defendant prior to the running of limitations, but extends the limitation period for 75 days for all potential parties if notice is given to any defendant." 811 S.W.2d at 143. The court analyzed Maddux and Rhodes and held that Rhodes correctly interpreted the statutes.

A central cause of the confusing interaction between §§ 4.01(a) and (c) seems to arise from the fact that, in specifying the tolling circumstances of § 4.01(c), the Texas Legislature did not supply a definition for the term "all parties and potential parties." Instead, § 1.03(b) of the Medical Liability and Insurance Improvement Act provides that the terms therein must have the meaning as consistent with the common law. The Rhodes court attempted to clarify this lack of clarity by holding:

> [T]he Legislature meant the tolling of the two-year limitations period would apply to all who are actively concerned with the giving and receiving of the notice of the claim, and to those who possibly will be, but are not at the time the notice is given, associated with the claim.

763 S.W.2d 522.

These cases reveal that key issues remain unsettled. There is an apparent conflict between § 4.01(a)'s mandate that notice be given to "each physician or health care provider against whom such claim is being made," and § 4.01(c)'s application of the tolling provision to "all parties and potential parties" if notice has been "given as provided in this Act."

7

Moreover, if it is concluded that giving notice to one physician does have the effect of tolling the statute of limitations for 75 days as to physicians who were initially "potential parties," a second issue emerges. It is unclear how the 60-day notice mandated by § 4.01(a) would be applied in such a case. Specifically, there is no guidance afforded by the statute or the case law as to whether claims against these subsequently sued "potential parties" would be barred if the required 60-day period between giving notice and filing suit was held to apply to the later sued parties. If it was so held, suits would then be filed outside of the 75-day extension of the statute of limitations. There is similarly no guidance as to whether each such physician would receive a 60-day period before suit could be filed against him or her if, as here, one physician received notice at a later date than the other "potential party" physicians. A determination of these issues appears to contemplate that one subsection, either § 4.01(a) or § 4.01(c), is subordinate to the other. If this supposition is correct, we are unable to discern which subsection holds the dominant position.

The Canavatis endeavor to resolve this predicament by contending that the fact that the notice to the appellees was given less than 60 days before suit was filed has been consistently held to be grounds for abatement but not grounds for dismissal. In the instant case no motions for abatement were filed, and under the holding of the district court none were needed. Your decision in Schepps v. Presbyterian Hospital of Dallas, 652 S.W.2d 934, 938

8

(Tex. 1983), held that although section 4.01 had a legitimate purpose in requiring medical malpractice claimants to give notice to the alleged malpractitioner sixty days prior to the filing of the suit, the purpose of the notice requirement, to promote a resolution of malpractice claims without excessive litigation costs, could be as easily accomplished by abating a cause for sixty days as by dismissing it.  See also, Hutchinson v. Wood, 657 S.W.2d 782, 783 (Tex. 1983) (per curiam) (reaching same conclusion as Schepps and abating in accordance); Baber v. Edman, 719 F.2d 122, 123 (5th Cir. 1983) (following Schepps and remanding with instructions to stay proceedings for sixty days).

Schepps, however, is distinguishable from the instant case. The plaintiffs in Schepps filed suit against the physician and the hospital with over 60 days remaining in the two-year statute of limitations period, but gave no notice prior to filing their claims.  Under the facts of that case, implementing the 60-day notice requirement by abatement still allowed suit to be filed within the two-year period.  Thus, there was no need even to consider any tolling issue as abatement did not extend the limitations period.  Schepps consequently does not control the issue in the case before us.

We conclude that instructions from the Supreme Court of the State of Texas on these issues will completely control our decision in the case pending before us.

### III. QUESTIONS CERTIFIED

1. If, pursuant to Tex. Rev. Civ. Stat. Ann. art. 4590i § 4.01(a), a plaintiff properly notifies a physician or other health care provider of a health care liability claim within the applicable two-year statute of limitations, does this notice serve to toll the period of limitations for an additional 75 days, pursuant to § 4.01(c), as to other physicians and health care providers who are potential parties?

2. If the first question is answered in the affirmative, then what is the effect of the notice provision, of § 4.01(a), if it requires 60 days between giving notice and filing suit as to potential parties when the 60 days places the claim outside of the two-year and 75-day extended limitations period? Further, would a separate 60-day period apply to each potential party if notice was given to individual potential parties on different dates? Can abatement be applied beyond the extended limitations period?

We disclaim any intention or desire that the Supreme Court of the State of Texas confine its reply to the precise form or scope of the questions certified.

QUESTIONS CERTIFIED TO TEXAS SUPREME COURT.