**Laura Patricia Canavati De CHECA et al., Appellants,**

v.

**DIAGNOSTIC CENTER HOSPITAL, INC. et al., Appellees.**

No. D–2761.

Supreme Court of Texas.

April 7, 1993.

Rehearing Overruled June 16, 1993.

Thomas Black, Luther H. Soules, III, San Antonio, J. Ken Nunley, Boerne, for appellants.

John D. Ellis, Jr., George E. Bradford, Jr., Robert L. Ramey, M. Karinne McCullough, Katherine Lynn Levy, Houston, Richard E. Windhorst, Jr., New Orleans, LA, for appellees.

## OPINION

CORNYN, Justice.

This case comes to us on certified questions from the United States Court of Appeals for the Fifth Circuit. The questions require interpretation of the notice and limitations provisions of the Texas Medical Liability and Insurance Improvement Act (the Act).[1] Specifically, we are asked: 1) whether notice of a health care liability claim[2] to one health care provider tolls the statute of limitations for seventy-five days for all health care providers against whom a claim is timely asserted, 2) whether a claim is barred when notice is served within two years and seventy-five days but suit is not filed for sixty days, placing the commencement of litigation outside the extended limitations period, 3) whether each health care provider sued is entitled to a separate sixty-day presuit negotiation period, and 4) whether a claim may be abated, due to the failure to provide timely notice, beyond the two year and seventy-five day extended limitations period. For the following reasons, we answer each of these questions in the affirmative.

In the underlying suit, Robert Canavati's surviving spouse and children alleged medi-

---

1. The pertinent sections of article 4590i provide:
   Section 4.01(a)
   Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.
   Section 4.01(c)
   Notice given as provided in this Act shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.
   Section 10.01
   Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. Tex.Rev.Civ.Stat.Ann. art. 4590i, §§ 4.01(a) & (c) & 10.01 (Vernon Supp.1993).

2. "Health care liability claim" is defined in the statute as:
   a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.
   Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.03(a)(4).

cal malpractice by various health care providers. Only the allegations against Drs. Burbridge, Burnazian, and Davis are at issue here. The United States District Court for the Southern District of Texas found that the physicians were protected by the two-year statute of limitations and thus granted summary judgment in their favor.[3] Determining that key issues dispositive of the case are unsettled under Texas precedent, the Fifth Circuit certified these questions to us. *De Checa v. Diagnostic Center Hosp., Inc.*, 967 F.2d 126 (5th Cir.1992), *certified questions accepted*, 36 Tex.Sup.Ct.J. 57 (Oct. 17, 1992).

The parties stipulated that Robert Canavati's treatment was completed and the statute of limitations began to run, at the latest, on September 25, 1986. Under section 10.01 of the Act, in the absence of any presuit notice by the Canavatis, the limitations period against all health care providers would have expired two years later on September 25, 1988. Sending notice within those two years, however, would have tolled the limitations period under section 4.01(c) for an additional seventy-five days, until November 24, 1988. The Canavatis served presuit notice of their claim on other health care providers who are not involved in this proceeding within two years of accrual. They served presuit notice on the physicians within two years and seventy-five days.

Section 4.01 requires that notice of a health care liability claim be sent to "each physician ... at least sixty days before the filing of a suit" and provides a seventy-five day tolling period, once timely notice is sent, as "to all parties and potential parties." TEX.REV.CIV.STAT.ANN. art. 4590i § 4.01(a), (c). The Canavatis contend that the notice of the claim they sent to the other defendants within two years of the claim's accrual and more than sixty days before filing their lawsuit also tolled the statute of limitations for the physicians for seventy-five days. The physicians insist, however, that the Canavatis cannot take advantage of the tolling period. They argue that when a health care provider is served with notice of a claim, the tolling period is triggered for the recipient only. Thus, the physicians contend that the failure to notify them individually within the statutorily-prescribed period means that the suit against them was barred two years after the completion of Robert Canavati's medical treatment.

The Canavatis argue that the term "potential parties" in section 4.01(c) refers to any health care providers against whom a health care liability claim is timely asserted. Under their interpretation, the physicians were "potential parties" at the time the Canavatis notified the other defendants; accordingly notice to the latter tolled the limitations period as to the former as well. In contrast, the physicians assert that the term "potential parties" in section 4.01(c) refers only to health care providers unknown to the claimant during the two-year limitations period. The physicians maintain that any other interpretation would allow a claimant deliberately to fail to notify a known health care provider who would eventually be sued.

■ We agree with the Canavatis. The "potential parties" language in subsection (c) means that notice to any health care provider under subsection (a) tolls the limitations period for seventy-five days as to all parties against whom a health care lia-

---

3. The pertinent stipulated dates are as follows:

09/25/86 Completion of Robert Canavati's treatment (latest date limitations period began to run)
04/18/88 First health care provider notified
09/08/88 Other health care providers notified
09/25/88 Two years from the completion of Robert Canavati's treatment
11/10/88 Drs. Davis and Burbridge notified
11/14/88 Dr. Burnazian notified
11/18/88 Lawsuit filed
11/24/88 Two years and seventy-five days from the completion of Mr. Canavati's treatment

bility claim is timely asserted. *Roberts v. Southwest Texas Methodist Hosp.*, 811 S.W.2d 141, 143 (Tex.App.—San Antonio 1991, writ denied); *Rhodes v. McCarron*, 763 S.W.2d 518, 521–22 (Tex.App.—Amarillo 1988, writ denied).

Our legislature intended to enact a strict and predictable limitations period. *See Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985). We believe that the physicians' interpretation would undermine the legislature's intent. Their view that the term "potential parties" refers only to health care providers unknown to the claimant during the two-year limitations period would create a collateral fact issue regarding which defendants the claimant knew of and when such knowledge was acquired. This result is avoided by a simpler rule consistent with the words of the statute and legislative intent: notice to one serves to toll the limitations period for all.

The dissenting justices claim that our construction of the Act will entice patients to timely serve notice on one health care provider to obtain an initial seventy-five day tolling period, then to serve another defendant on the last day to obtain an additional tolling period and so on for all defendants in order to evade the statute of limitations. Our interpretation of the Act, however, does not allow for more than one tolling. *See Rhodes*, 763 S.W.2d at 521–22. When notice is sent to any health care provider within two years of the claim's accrual, the limitations period for all defendants is tolled for seventy-five days.[4] No claim, however, may ever be timely launched more than two years and seventy-five days after its accrual. For these reasons, we answer the first question in the affirmative.

■ Second, we are asked whether a claim is barred when notice is served within two years and seventy five days but suit is

not filed for sixty days, placing the commencement of litigation outside the extended limitations period. The answer to this question is yes. Suit may never be filed outside the extended limitations period. If no notice of a claim is served at all, suit must be filed within two years of the claim's accrual. If notice of a claim is served on any health care provider, suit must be filed within two years and seventy-five days of the claim's accrual. Consequently, under exigent circumstances a plaintiff may be required to file suit before the sixty day presuit notice period elapses or file suit without tendering any notice to avert the expiration of the limitations period.

The failure to serve a particular health care provider with notice of a claim, however, results only in abatement as to that defendant.[5] In *Schepps v. Presbyterian Hospital of Dallas*, we said that the legislature's purpose in enacting this notice provision "was to encourage pre-suit negotiations so as to avoid excessive cost of litigation.... [That goal] can be accomplished by requiring an abatement of the cause of action for a duration of sixty days in the event that plaintiff fails to give the required notice, and at the same time protect plaintiff's right to maintain that lawsuit." 652 S.W.2d 934, 938 (Tex.1983). *See also Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992) (construing comparable notice provision under the Deceptive Trade Practices Act). Therefore, if suit is filed within the limitations period, the only remedy for failure to provide the statutory notice remains abatement.

■ Next we are asked whether a separate sixty-day presuit negotiation period is required for each party sued. We also answer this question in the affirmative. Affording each health care provider a sixty-day period to negotiate a settlement furthers the purpose we enunciated in

---

**4.** This assumes the limitations period for all defendants is still running when notice is served. Notice cannot toll a limitations period that has already elapsed.

**5.** During any abatement period, and within the limitations period, the plaintiff remains free to join additional defendants.

*Schepps,* 652 S.W.2d at 938. Accordingly, a claimant must provide the statutory pre-suit notice to each health care provider sued. Should the claimant fail to do so, the court shall grant a sixty-day abatement of the suit upon request of each affected defendant.

█ Finally, we are asked whether a claim may be abated, due to the failure to provide timely notice, beyond the two year and seventy-five day extended limitations period. The Canavatis assert that this question is answered affirmatively by *Schepps.* We agree. Although the abatement in *Schepps* did not place the resumption of the lawsuit outside the limitations period, that case established a broader principle applicable here. In *Schepps* we held "that in any medical malpractice action subject to article 4590i, where a plaintiff has failed to give notice sixty days prior to the filing of suit, upon motion of the defendant, the cause should be abated for sixty days." 652 S.W.2d at 938 (emphasis added).

Furthermore, our intention that abatement be the remedy for failure to give notice was indicated by our disapproval of *Wilborn v. University Hospital,* 642 S.W.2d 50 (Tex.App.—Amarillo 1982, no writ). *See Schepps,* 652 S.W.2d at 938. In *Wilborn,* the statute of limitations began to run on December 18, 1978. The claimant filed suit on December 16, 1980, without providing the required sixty-day presuit notice. The trial court dismissed the case, and the court of appeals affirmed. We noted in *Schepps* that abatement, rather than dismissal, was the appropriate remedy under the facts of *Wilborn,* even though it would place the resumption of the legal proceedings outside the limitations period. *Id.* Thus, abatement is the sole remedy for failure to serve timely notice of a health care liability claim under the Act.

For the foregoing reasons, we answer each of the four certified questions presented to us in the affirmative.

Dissenting Opinion by HECHT, J., joined by PHILLIPS, C.J., and ENOCH, J.

HECHT, Justice, dissenting.

As the Fifth Circuit has correctly concluded, there are two possible constructions of the limitations tolling provisions in the Medical Liability and Insurance Improvement Act of Texas, TEX.REV.CIV.STAT. art. 4590i, § 4.01. Because I believe the Court has chosen the less plausible of the two, without full regard for the purpose of the provisions, I respectfully dissent.

Section 10.01 of the Act prescribes a two-year limitation period for health care liability claims. Section 4.01(a) requires that a claimant give notice to each person against whom a claim is made at least 60 days before filing suit. Section 4.01(c) states that "[n]otice given as provided in this Act" tolls limitations for 75 days following the giving of notice, "and this tolling shall apply to all parties and potential parties." Simple as these provisions seem, applying them is anything but simple.

A hypothetical illustrates the problem. Assume that P claims that D1, D2, D3 and D4 were all negligent in caring for him during a period of illness. Assume that the two-year limitations period expires on P's claims against defendants on June 1, June 10, June 20 and July 1 of the same year, respectively. Notice to D2 on June 10 tolls the running of limitations on P's claim against D2 for 75 days, thus allowing 60 days for the notice period and 15 additional days in which to file suit.

The Fifth Circuit's first question is whether notice to D2 on June 10 tolls limitations as to D3 and D4. The Court answers "yes", reasoning that, in the words of the statute, "this tolling [as to D2] shall apply to all parties and potential parties." As the Court notes, notice to one defendant after limitations has run on a claim against another has no effect on the barred claim; it remains barred. *Ante* at 938 n. 5. Thus, in my example, notice to D2 on June 10 does not toll limitations as to D1 since the limitations period applicable to D1 has already expired and there is nothing to toll. As to D3 and D4, however, the Court holds

that the notice to D2 tolls limitations as to both of them for 75 days from the giving of notice to D2.

There are two problems with this construction of the statute. First, it would require that notice to D3 on June 20 also tolled limitations as to D2, D3 and D4 for 75 days following June 20, thus extending the limitations period as to each of these three defendants by 10 days (June 20–June 10). If the notice periods did not overlap, the extension could be for the entire tolling period. Thus, if P notified D2 on February 1, all limitations periods would be tolled by 75 days, and if P then notified D3 on May 1, all limitations periods would be tolled by an additional 75 days. By notifying defendants 75 days apart, P could thus extend limitations by as many 75-day periods as there were defendants. The Court rejects this result, not very surprisingly, but it does not explain why. It does not because it cannot. The statute as construed by the Court affords no basis for rejecting its untoward consequences. The Court cannot avoid the undesirable affects of its construction simply by disavowing them, and if they cannot be avoided, then one must question whether the construction is correct.

The second problem with the Court's construction is that if notice to one defendant tolls limitations as to all, but only once, what happens if P notifies one defendant but does not notify another defendant until less than 60 days before the expiration of limitations as to that second defendant? Returning to the hypothetical, if P notifies D2 on June 10, what happens if P does not notify D3 until September 3, the 75th day after June 20, when limitations against D3 expires? Is D3 nevertheless entitled to 60 days notice? The Court answers "yes". May P sue D3 after September 3? The Court answers "no"; suit must be brought before limitations, as tolled, expires. So, is the suit abated until the notice period to D3 expires? The Court answers "yes". Although these answers provide a workable scheme, they reveal the second difficulty

with the Court's construction of the statute. The purpose of the tolling provision is to allow a claimant to give notice up to the last day of the limitations period and still give the defendant 60 days to respond before suit is filed. The Court's construction detaches the tolling provision from its purpose. In the Court's view, it is possible that one defendant will have the benefit of the 60-day presuit negotiation period, but that all other defendants will be denied that benefit, thus impairing the purpose of the tolling provision.

I believe the more plausible reading of section 4.01 is that giving notice to a defendant tolls limitations as to *that* defendant, no matter how many defendants there are, but not as to all defendants. The language, "and this tolling shall apply to all parties and potential parties", makes clear that after P notifies D2, tolling limitations as to D2, timely notice to D3 also tolls limitations as to D3. It does not mean, however, that notifying D2 tolls limitations as to D3. I concede that this construction does not fully account for the statutory language, "all parties *and potential* parties", unless "and potential parties" was added out of abundance of caution. But this difficulty seems far less significant to me than those raised by the Court's construction.

The Court rejects this view for the reason that it "would create a collateral fact issue as to which of the defendants the claimant had reason to know of and when such knowledge was acquired." *Ante* at 938. Such "collateral" fact issues are, of course, unavoidable under either the Court's construction or the one I believe is correct. Neither construction makes it more or less certain, or more or less relevant, when a claimant learned of the identity of a defendant. The Court also says that it prefers its construction to mine because of simplicity. I suggest, however, that if simplicity is the standard to be applied, the Court's construction is seriously wanting. The second question raised by the Fifth Circuit, and the problems attendant to it, need not be addressed under my view. For the Court, they are unavoidable.

The difference between the two constructions, I think, is principally one of perspective. If the tolling provision is made the focal point of analysis, then I believe the Court's construction is the better view. Whether and when to toll are the issues, not why. But if the purpose of the provision—allowing a plaintiff the full two years to file suit but also ensuring that a defendant has time to respond to notice of a claim before he is sued—is the focal point, then I believe the view I have advanced is better. The result is not much different, only that in the Court's view some defendants may not have an opportunity to respond to a claim before they are sued. It cannot be denied that this effects some prejudice and to some extent compromises the purpose of the provision, although as a practical matter, the effect is often very small. *See Hines v. Hash,* 843 S.W.2d 464, 468–469 (Tex.1992) (failure to give notice of a claim under the Texas Consumer Protection—Deceptive Trade Practices Act before filing suit may not significantly prejudice defendant).

However small the difference may be in the practical effects of the two constructions of this statute, the proper perspective is still important. At one point in history, the view that the earth is the center of the universe was crucial. To support this view, it was necessary to describe the motion of all other heavenly bodies relative to the earth. While this can be done, as Ptolemy demonstrated, the Copernican view that the earth is but one body moving among others avoids unnecessary complications. The effects are roughly the same, though the perspective is much different.

So it is here. I would answer the first question certified by the Fifth Circuit "no" and would not reach the second question. This result fully satisfies the purpose of the statute. Accordingly, I respectfully dissent.

PHILLIPS, C.J., and ENOCH, J., join in this dissenting opinion.