**Shan KOVALY, Appellant**

v.

**Tulsidas KURUVANKA, M.D., Northwest Houston Cardiology, P.A., Ikedinobi U. Eni, M.d., Ikedinobi U. Ini, M.D., P.A., and Eni Health Care, Appellees**

NO. 01–15–00350–CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued June 28, 2016

540

Iain G. Simpson, for Appellant.

James B. Edwards, Stacy Garcia, Joel Randal Sprott, Diana L. Faust, Kyle M. Burke, Kristen Blanchard, for Appellee.

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

## OPINION

Sherry Radack, Chief Justice

This an appeal from a summary judgment on limitations in a medical-malpractice case. At issue is whether proper notice tolling limitations as to one defendant was effective to toll limitations as to later-sued defendants. We reverse the trial court's judgment and remand for further proceedings.

## BACKGROUND

The basic facts of the underlying case appear largely undisputed. On August 28, 2012, Plaintiff-appellant Shan Kovaly went to Houston Northwest Medical Center complaining of chest pain. Following diagnostic procedures, doctors determined he was likely having a heart attack. Defendant-appellee Dr. Kuruvanka performed an angioplasty procedure and inserted two stents.

On August 30, 2012, defendant-appellee Dr. Eni discharged Kovaly from the hospital with several prescriptions written by Kuruvanka, i.e., Lopressor (25 mg twice a day), Pravachol (20 mg at bedtime), aspirin (325 mg daily), Plavix (75 mg daily), and Lisinopril (10 mg twice daily). Kovaly alleges that neither Kuruvanka as the prescribing doctor, nor Eni as the discharging doctor, reviewed the prescriptions to ensure they were complete.

Kovaly presented his prescriptions at a Wal–Mart pharmacy to fill, but the pharmacist and pharmacy manager refused to fill the prescriptions because the prescriptions lacked a quantity of pills to be dispensed. Both Wal–Mart and Kovaly unsuccessfully tried to reach Kuruvanka and Eni over the next four days to get the prescriptions corrected. On September 4, 2012, Kovaly was readmitted to Houston Northwest Medical Center and diagnosed with in-stent thrombosis, attributable to

his not taking his prescribed blood thinner Plavix that he had been unable to fill. Kovaly alleges he required additional hospitalization and treatment as a result.

## PROCEDURAL HISTORY

### A. The Notice to, and the lawsuit against, Wal–Mart

On July 23, 2013, Kovaly's attorney sent the following pre-suit notice and a health care authorization to Wal–Mart:

Pursuant to TEX. CIV PRAC. & REM.CODE § 74.052 and § 74.051, you are notified that our law firm has been retained to represent Shan Kovaly, in a potential health-care claim against you in connection with injuries and damages sustained by him regarding care and treatment rendered by you on or about August 27, 2012. According to the information furnished by our client, there appears to be a reasonable cause to file suit in this matter.

Pursuant to the code provisions stated above, we are entitled to a complete and unaltered copy of your medical and billing records pertaining to Shan Kovaly, within forty-five days (45) days of your receipt of this letter. I have attached and incorporated the authorization form for release of protected health information pursuant to Chapter 74.051 and 74.052. In addition, I have attached affidavits attesting to the accuracy of your medical and billing records. Please execute and return these along with the copies of Shan Kovaly's records. I hope and trust that you will comply with my request as soon as possible and get this information to me so that I might fully evaluate this claim.

Also, please be advised that should I determine that this claim is meritorious, a lawsuit will be instituted after the passage of sixty (60) days time from your receipt of this letter. I hope that this matter does not need to be litigated, but please be advised that should this claim have merit, I am fully prepared to do so.

This letter attached an "Authorization Form for Release of Protected Health Information," "Medical Records Affidavit," and "Billing Records Affidavit."

The release authorization stated:

A. I, Shan Kovaly, hereby authorize Wal–Mart Stores Texas, LLC to obtain and disclose, within the parameters below, the protected health information described below for the following specific purposes:

1. To facilitate the investigation and evaluation of the health care claim described in the accompanying Notice of Health Care Claim; or

2. Defense of any litigation arising out of the claim made the basis of the accompanying Notice of Health Care Claim.

The health information to be obtained, used, or disclosed extends to and includes verbal as well as the written and is specifically described as the following:

1. The health information in the custody of the following physicians or health care providers who have examined, evaluated, or treated Shan Kovaly in connection with the injuries alleged to have been sustained in connection with the claim asserted in the accompany[ing] Notice of Health Care Claim. Below is a list of the names and addresses of current treating physicians or health care providers:

a. Wal–Mart Stores Texas, LLC
CT Corporation
350 N. St. Paul, Suite 2900
Dallas, Texas 75201

b. Houston Northwest Medical Center
710 FM 1960 Road West

Houston, Texas 77090

c. Memorial Hermann Memorial City Medical Center

921 Gessner Road

Houston, Texas 77024

d. Lyndon B. Johnson General Hospital

5656 Kelley Street

Houston, Texas 77026

e. Ben Taub General Hospital

1504 Taub Loop

Houston, Texas 77030

This authorization shall extend to any physicians or health care providers that in the future evaluate, examine, or treat Shan Kovaly in injuries alleged in connection with the claim made the basis of the attached Notice of Health Care Claim:

2. The health information in the custody of the following physicians or health care providers, who have examined, evaluated or treated Shan Kovaly during a period commencing five years prior to the incident made the basis of the accompanying Notice of Health Care Claim. Below is a list of the names and addresses of such physicians or health care providers:

a. Midtown Medical Group

4140 Southwest Freeway

Houston, Texas 77027

B. Excluded Health Information—the following constitutes a list of physicians or health care providers possessing health care information concerning Shan Kovaly to which this authorization does not apply because I contend that such health care information is not relevant to the damages being claimed or to the physical, mental, or emotional condition of Shan Kovaly arising out of the claim made the basis of the accompanying Notice of Health Care Claim.

a. None

C. The person or class of persons to whom the health information of Shan Kovaly will be disclosed or who will make use of said information are:

1. Any and all physicians or health care providers providing care or treatment to Shan Kovaly;

2. Any liability insurance entity providing liability insurance coverage or defense to any physician or health care provider to whom Notice of Health Care Claim has been given with regard to the care and treatment of Shan Kovaly;

3. Any consulting or testifying experts employed by or on behalf of Wal–Mart Stores Texas, LLC with regard to the matter set out in the Notice of Health Care Claim accompanying the authorization;

4. Any attorneys (including secretarial, clerical, or paralegal staff) employed by or on behalf of Shan Kovaly with regard to the matter set out in the Notice of Health Care Claim accompanying this authorization;

5. Any trier of the law or facts relating to any suit filed seeking damages arising out of medical care or treatment of Shan Kovaly.

E. This authorization shall expire upon resolution of the claim asserted or the conclusion of any litigation instituted in connection with the subject matter of the Notice of Health Care Claim accompanying the authorization, whichever occurs sooner.

F. I understand that, without exception, I have the right to revoke this authorization in writing. I further understand the consequence of any such revocation as set out in Section 74.052, Civil Practice and Remedies Code.

G. I understand that signing of this authorization is not a condition for continued treatment, payment, enrollment, or eligibility for health plan benefits.

H. I understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and may no longer be protected by federal HIPAA privacy regulations.

On July, 25, 2013, Kovaly sued Wal-Mart and several of its unknown agents. Wal-Mart removed that suit to federal court, where Wal-Mart obtained— on October 21, 2014—final summary judgment on the theory that it did not have a duty to fill an incomplete prescription.[1]

## B. The lawsuit against Kuruvanka, Eni, Northwest Houston Cardiology, P.A., and Eni Health Care

On November 11, 2014—273 days after last receiving care from Eni and Kuruvanka—Kovaly sued the additional defendant-appellees ("Eni/Kuruvanka defendants"). On January 8, 2015, Eni's lawyer sent an email to Kovaly's counsel requesting a copy of the notice letter sent to the doctors. Kovaly's counsel responded with a copy of the notice letter to Wal-mart, and stated that "notice to one is notice to all."

## C. The Summary Judgment

In February 2015, the Eni/Kuruvanka defendants both moved for traditional summary judgment on limitations. The Kuruvanka defendant's motion summarized their argument as follows:

"Plaintiff's suit is barred by the Statute of Limitations because:

1. The statute of limitations for a Chapter 74 claim is 2 years.

2. Limitations can be tolled for 75 days *only* with proper notice *and* a statutorily compliant authorization.

3. Plaintiff failed to provide a statutorily compliant authorization with his pre-suit notice and therefore failed to toll the limitations.

4. Plaintiff filed his lawsuit after the expiration of the statute of limitations."

The Eni defendants made a similar argument in their summary judgment motion, contending:

Plaintiff never provided a notice or a medical authorization to the Defendants in the present case and instead relied on the notice and authorization provided to Wal-Mart in the Wal-Mart case. The authorization, however, did not provide the Defendants in this case with authority to obtain protected health information pursuant to § 74.052(c)(A). As such, the authorization did not comply with the statutory requirements and, accordingly, Plaintiff's "notice" did not serve to toll the limitations period as to Defendants in the present case.

Kovaly responded to both motions with the argument that, under the supreme court's seminal decision in *De Checa v. Diagnostic Center Hospital, Inc.*, 852 S.W.2d 935, 938 (Tex.1993) ("[N]otice to one serves to toll the limitations period to all."), as well as the multiple appellate courts that have followed it, his notice and authorization to Wal–Mart operated to toll limitations against all the defendants, ren-

---

1. Kovaly's theory was that Wal-Mart should have provided him with an emergency 72-hour supply of his medication. The federal district court excluded Kovaly's pharmaceutical expert. On September 22, 2015, the Fifth Circuit reversed and remanded the district court's summary judgment in favor of Wal-Mart, held it was error to exclude Kovaly's expert witness, and remanded for further proceedings. *Kovaly v. Wal–Mart Stores Tex., Inc.*, 627 Fed.Appx. 288 (5th Cir.2015).

dering his suit against all the defendants timely.

The trial court granted summary judgment in favor of all the defendants, and Kovaly brought this appeal.

### ISSUES ON APPEAL

Kovaly brings this single issue on appeal:

"The trial court erred by granting all defendant/appellees summary judgment on Kovaly's healthcare liability claims."

### APPLICABLE LAW

A health care liability claim is governed by the two year statute of limitations. TEX. CIV. PRAC. & REM.CODE ANN. § 74.251(a). That limitations period is tolled for 75 days as to both parties and potential parties if certain statutory notice requirements are met by the plaintiff:

#### § 74.051. Notice

(a) Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. The notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.

(b) In such pleadings as are subsequently filed in any court, each party shall state that it has fully complied with the provisions of this section and Section 74.052 and shall provide such evidence thereof as the judge of the court may require to determine if the provisions of this chapter have been met.

(c) *Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.*

(d) All parties shall be entitled to obtain complete and unaltered copies of the patient's medical records from any other party within 45 days from the date of receipt of a written request for such records; provided, however, that the receipt of a medical authorization in the form required by Section 74.052 executed by the claimant herein shall be considered compliance by the claimant with this subsection.

. . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 74.051 (West 2011) (emphasis added).

Section 74.052 sets forth the requirements for the authorization form required to be supplied with the notice:

#### § 74.052. Authorization Form for Release of Protected Health Information

(a) Notice of a health care claim under Section 74.051 must be accompanied by a medical authorization in the form specified by this section. Failure to provide this authorization along with the notice of health care claim shall abate all further proceedings against the physician or health care provider receiving the notice until 60 days following receipt by the physician or health care provider of the required authorization.

(b) If the authorization required by this section is modified or revoked, the physician or health care provider to whom the authorization has been given shall have the option to abate all further proceedings until 60 days following receipt of a replacement authorization that must comply with the form specified by this section.

(c) The medical authorization required by this section shall be in the following

form and shall be construed in accordance with the "Standards for Privacy of Individually Identifiable Health Information" (45 C.F.R. Parts 160 and 164).

## AUTHORIZATION FORM FOR RELEASE OF PROTECTED HEALTH INFORMATION

A. I, _____ (name of patient or authorized representative), hereby authorize _____ (name of physician or other health care provider to whom the notice of health care claim is directed) to obtain and disclose (within the parameters set out below) the protected health information described below for the following specific purposes:

1. To facilitate the investigation and evaluation of the health care claim described in the accompanying Notice of Health Care Claim; or

2. Defense of any litigation arising out of the claim made the basis of the accompanying Notice of Health Care Claim.

B. The health information to be obtained, used, or disclosed extends to and includes the verbal as well as the written and is specifically described as follows:

1. The health information in the custody of the following physicians or health care providers who have examined, evaluated, or treated _____ (patient) in connection with the injuries alleged to have been sustained in connection with the claim asserted in the accompanying Notice of Health Care Claim. (Here list the name and current address of all treating physicians or health care providers). This authorization shall extend to any additional physicians or health care providers that may in the future evaluate, examine, or treat _____ (patient) for injuries alleged in connection with the claim made the basis of the attached Notice of Health Care Claim;

2. The health information in the custody of the following physicians or health care providers who have examined, evaluated, or treated _____ (patient) during a period commencing five years prior to the incident made the basis of the accompanying Notice of Health Care Claim. (Here list the name and current address of such physicians or health care providers, if applicable.)

C. Excluded Health Information—the following constitutes a list of physicians or health care providers possessing health care information concerning _____ (patient) to which this authorization does not apply because I contend that such health care information is not relevant to the damages being claimed or to the physical, mental, or emotional condition of _____ (patient) arising out of the claim made the basis of the accompanying Notice of Health Care Claim. (Here state "none" or list the name of each physician or health care provider to whom this authorization does not extend and the inclusive dates of examination, evaluation, or treatment to be withheld from disclosure.)

D. The persons or class of persons to whom the health information of _____ (patient) will be disclosed or who will make use of said information are:

1. Any and all physicians or health care providers providing care or treatment to (patient);

2. Any liability insurance entity providing liability insurance coverage or defense to any physician or health care provider to whom Notice of Health Care Claim has been given with regard to the care and treatment of _____ (patient);

3. Any consulting or testifying experts employed by or on behalf of _____ (name of physician or health care provider to whom Notice of Health Care Claim has been given) with regard to the matter set out in the Notice of Health Care Claim accompanying this authorization;

4. Any attorneys (including secretarial, clerical, or paralegal staff) employed by or on behalf of _____ (name of physician or health care provider to whom Notice of Health Care Claim has been given) with regard to the matter set out in the Notice of Health Care Claim accompanying this authorization;

5. Any trier of the law or facts relating to any suit filed seeking damages arising out of the medical care or treatment of _____ (patient).

E. This authorization shall expire upon resolution of the claim asserted or at the conclusion of any litigation instituted in connection with the subject matter of the Notice of Health Care Claim accompanying this authorization, whichever occurs sooner.

F. I understand that, without exception, I have the right to revoke this authorization in writing. I further understand the consequence of any such revocation as set out in Section 74.052, Civil Practice and Remedies Code.

G. I understand that the signing of this authorization is not a condition for continued treatment, payment, enrollment, or eligibility for health plan benefits.

H. I understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and may no longer be protected by federal HIPAA privacy regulations.

Signature of Patient/Representative

TEX. CIV. PRAC. & REM.CODE ANN. § 74.052 (West 2011).

**STANDARD OF REVIEW**

■ We review a summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). A defendant moving for summary judgment on an affirmative defense, such as limitations, must conclusively prove the elements of its defense. *Pustejovsky v. Rapid–American Corp.,* 35 S.W.3d 643, 646 (Tex.2000).

**PARTIES' ARGUMENTS**

■ The parties are in agreement that Kovaly's claim accrued no later than August 30, 2012, the day he received the defectively written prescriptions and was discharged from the hospital. Thus, because Kovaly's claims are subject to a two-year limitations period, and because he did not bring his claims against the Eni/Kuruvanka defendants until November 11, 2014, it is undisputed that these claims were untimely unless the 75–day tolling provision in section 74.051 applies.

Kovaly argues that " 'tolling' and 'notice' are not the same." "Notice" is given to the party who actually receives a notice letter. "In contrast," he contends, " 'tolling' applies to the health care provider who receives actual notice and authorization and *also* applies to 'all parties and potential parties' as well." (citing TEX. CIV. PRAC. & REM.CODE ANN. § 74.051(c)). Thus, according to Kovaly, "once tolling is accomplished with respect to one party, it is accomplished with respect to every party and every *potential* party." (citing *De Checa,* 852 S.W.2d at 938 ("[N]otice to one serves to toll the limitations period for all."); *see also Sewell v. Adams,* 854 S.W.2d 257, 261 (Tex.App.—Houston [14th Dist.] 1993, no writ) ("[W]hen notice is sent to any health care provider within two

years of the claim's accrual, the limitations period for all defendants is tolled for seventy-five days.")). Because Kovaly sent a timely notice letter to Wal–Mart, he contends that limitations were also tolled on claims against the Kuruvanka/Enu defendants as "potential parties."

The Kuruvanka defendants respond that limitations were not tolled as to them because the "pre-suit medical authorization Mr. Kovaly gave to a non-party [Wal–Mart] does not satisfy the requirements of Chapter 74 to Toll the Statute of Limitations." They also point out that the notice and authorization provided to Wal–Mart only granted Wal–Mart the authority to obtain and disclose Kovaly's protected health information. In sum, they contend that "because the authorization did not provide Dr. Kuruvanka or the Eni defendants in the present case with authority to obtain protected health information pursuant to § 74.052(c)(A), the authorization did not comply with the statutory requirements and, accordingly, Mr. Kovaly's 'notice' did not serve to toll the limitations period as to Mr. Kovaly's claims against" the Kuruvanka defendants.

The Eni defendants similarly argue that limitations was not tolled because Kovaly "did not comply with Chapter 74's pre-suit notice requirements—most importantly the requirement of providing the medical authorizations for release of health information—and therefore may not avail himself of the tolling provision." They emphasize the policy behind the notice and authorization requirements, i.e., "to afford the defendant the ability to investigate the claim and resolve it *prior to* protracted litigation." They contend that Kovaly's "procedural tactics undermine [this] Legislative intent" and that *De Checa*, the case upon which Kovaly primarily relies, is distinguishable on its facts.

## ANALYSIS

The tolling provision Kovaly relies upon states: "Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties." Tex. Civ. Prac. & Rem.Code Ann. § 74.051(c). Because each party asserts that supreme court caselaw interpreting section 74.051 and its predecessor, 4590i, supports their respective positions, we begin with a discussion of these cases and a comparison to the facts presented here.

Kovaly relies primarily on *De Checa v. Diagnostic Center Hospital, Inc.,* 852 S.W.2d 935, 938 (Tex.1993). *De Checa* was a case decided on certified questions from the Fifth Circuit concerning section 74.051's predecessor statute, Tex.Rev.Civ. Stat. Ann art. 4590i. That statute provided, in relevant part:

*Section 4.01(a):*

Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.

*Section 4.01(c):*

Notice given as provided in this Act shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.

*Section 10.01:*

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the

medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.

*De Checa*, 852 S.W.2d at 936 n.1 (quoting repealed TEX.REV.CIV. STAT. ANN art. 4590 *i* §§ 4.01(a) & (c) & 10.01 (Vernon Supp. 1993)).

In *De Checa*, the timeline for the medical malpractice suit brought by Robert Canavati's surviving spouse and children was as follows:

09/25/86  Completion of Robert Canavati's treatment (latest date limitations period began to run)

04/18/88  First health care provider notified

09/08/88  Other health care providers notified

09/25/88  Two years from the completion of Robert Canavati's treatment

11/10/88  Drs. Davis and Burbridge notified

11/14/88  Dr. Burnazian notified

11/18/88  Lawsuit filed

11/24/88  Two years and seventy-five days from the completion of Mr. Canavati's treatment

852 S.W.2d at 937 n.3. A federal district court granted summary judgment on limitations in favor of Drs. Burbridge, Burnazian, and Davis. *Id.* at 937. On appeal from those summary judgments, the Fifth Circuit determined that "key issues dispositive of the case are unsettled under Texas precedent." *Id.* The court thus certified the following questions to the Texas Supreme Court:

1) whether notice of a health care liability claim to one health care provider tolls the statute of limitations for seventy-five days for all health care providers against whom a claim is timely asserted,

2) whether a claim is barred when notice is served within two years and seventy-five days but suit is not filed for sixty days, placing the commencement of litigation outside the extended limitations period,

3) whether each health care provider sued is entitled to a separate sixty-day presuit negotiation period, and

4) whether a claim may be abated, due to the failure to provide timely notice, beyond the two year and seventy-five day extended limitations period.

*Id.* at 936. The supreme court answered each of these questions in the affirmative. *Id.* In so doing, the court rejected the argument that failure to notify certain of the defendants individually within the statutorily-prescribed period precluded application of the tolling period against them, rendering suit against them untimely:

The Canavatis argue that the term "potential parties" in section 4.01(c) refers to any health care providers against whom a health care liability claim is timely asserted. Under their interpre-

tation, the physicians were "potential parties" at the time the Canavatis notified the other defendants; accordingly notice to the latter tolled the limitations period as to the former as well. In contrast, the physicians assert that the term "potential parties" in section 4.01(c) refers only to health care providers unknown to the claimant during the two-year limitations period. The physicians maintain that any other interpretation would allow a claimant deliberately to fail to notify a known health care provider who would eventually be sued. We agree with the Canavatis. The "potential parties" language in subsection (c) means that notice to any health care provider under subsection (a) tolls the limitations period for seventy-five days as to all parties against whom a health care liability claim is timely asserted. *Roberts v. Southwest Texas Methodist Hosp.*, 811 S.W.2d 141, 143 (Tex.App.—San Antonio 1991, writ denied); *Rhodes v. McCarron*, 763 S.W.2d 518, 521–22 (Tex.App.—Amarillo 1988, writ denied). Our legislature intended to enact a strict and predictable limitations period. *See Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985). We believe that the physicians' interpretation would undermine the legislature's intent. Their view that the term "potential parties" refers only to health care providers unknown to the claimant during the two-year limitations period would create a collateral fact issue regarding which defendants the claimant knew of and when such knowledge was acquired. This result is avoided by a simpler rule consistent with the words of the statute and legislative intent: notice to one serves to toll the limitations period for all.

*Id.* at 937–38. In answering the other certified questions, the supreme court held that each defendant is entitled to notice under article 4590 *i*, but that failure to provide notice to each defendant does not deprive the plaintiff of the benefit of the tolling for the non-noticed defendant; rather it entitles the non-noticed defendant to a 60–day abatement from the trial court if it requests one. *Id.* at 939.

Kovaly concedes that *notice* to one defendant does not operate as *notice* to other actual or potential defendants. But he contends that under *De Checa* and the language of section 74.051(c), notice to a single defendant *tolls limitations* for the 75–day period as to all defendants and potential defendants. Any eventual defendant who is sued within two years and the 75–day tolling period that did not receive the statutory notice is entitled to an abatement, not summary judgment on limitations.

In response to Kovaly's reliance on *De Checa*, the Kuruvanka defendants cite section 74.051(a) ("Any person or his authorized agent asserting a health care liability claim *shall give written notice* of such claim by certified mail, return receipt requested, *to each physician or health care provider* against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. The notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.") and the Texas Supreme Court's decision in *Carreras v. Marroquin*, 339 S.W.3d 68, 74 (Tex.2011) (holding that notice of claim that is not accompanied by authorization for release of medical records does not toll limitations).

The Kuruvanka/Eni defendants all argue that because the statutory medical record release authorization form must accompany the statutory pre-suit notice to effectively toll limitations, limitations cannot be tolled as to any defendant or potential

defendant that does not receive an authorization form. They insist this is the only interpretation consistent with what the supreme court has recognized as the important purpose behind the authorization and tolling provision, i.e., "allow[ing] the defendant to procure the plaintiff's records from plaintiff's current treating healthcare providers and those five (5) years prior to defendant's treatment in order to assess whether the claim has merit and whether the defendant should consider early, presuit resolution." (citing TEX. CIV. PRAC. & REM.CODE ANN. § 74.052; *Carreras*, 339 S.W.3d at 73).

Despite these recognized policies behind the tolling period provided for in section 74.051, we agree with Kovaly that the plain statutory language, coupled with the supreme court's opinion in *De Checa*, required the trial court to recognize that his claims against the Kurvanka/Eni defendants, as potential parties, were tolled by his timely notice to Wal–Mart.

Kovaly served Wal–Mart with the required statutory notice and an authorization form tracking the required statutory form word-for-word. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.051(a) ("Any person ... asserting a health care liability claim shall give written notice of such claim ... to each physician or health care provider ... [and] the notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.").

Such notice should also have been provided to the Kurvanka/Eni defendants before they were sued, as notice should be sent to each physician or health care provider. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.051(a). That said, the statute clearly provides, with regard to tolling (rather than notice), that "[n]otice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and *this tolling shall apply to all parties and potential parties.*" TEX. CIV. PRAC. & REM.CODE ANN. § 74.051(c) (emphasis added). *De Checa* interpreted the prior version of the notice and tolling statute (before an attached authorization form was required) as providing that proper notice to one health care provider tolled limitations as to *all* potential parties, not only unknown ones.

The Kuruvanka/Eni defendants urge that a different outcome is warranted here because, under the current statutory scheme, a medical authorization form must accompany the plaintiffs' notice to a health care provider. TEX. CIV. PRAC. & REM.CODE ANN. § 74.051(a) ("The notice must be accompanied by the authorization form."). Because the supreme court held in *Carreras* that the plaintiffs notice in that case (which was *not* accompanied by the required authorization form) was not proper notice that would toll limitations, the Kuruvanka/Eni defendants argue that Kovaly's failure to serve each of them with an authorization form prevented limitations from being tolled. This is an overly broad reading of *Carreras* that is not supported by the language of section 74.051, and the Kurvanka/Eni defendants do not cite any authority for such an interpretation.

The legal principle announced in *Carreras* is that, given that the statute now reads that "notice *must be* accompanied by the authorization form," TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(a), "both [the notice and the authorization form] are required to constitute notice 'as provided' by Chapter 74." 339 S.W.3d at 73; *see also id.* ("The statute of limitations is tolled only if both notice and an authorization form are provided."). In this case, both notice and the authorization form were sent to Wal–Mart, which constituted proper notice under Chapter 74. At that point, limitations

were tolled for 75 days as to all parties and *potential parties.* Tex. Civ. Prac. & Rem. Code Ann. § 74.051(c). Once Kovaly sued the Kurvanka/Eni defendants—i.e. potential parties[2]—within two years plus 75 days, his suit was timely, and the Kurvanka/Eni defendants remedy for failure to receive notice and an authorization form was a request for abatement. *See De Checa,* 852 S.W.2d at 939.

We sustain Kovaly's sole issue.

## CONCLUSION

We reverse the trial court's judgment and remand for further proceedings.

---

2. The defendants make much of the fact that they were not actually made parties to the Wal–Mart litigation because Wal–Mart removed its case to federal court. Although no case has yet to address this issue, we conclude that Wal–Mart's removal and Kovaly's consequently suing the Kurvanka/Eni defendants under a different cause number does not preclude them from being "potential parties" to the original lawsuit against Wal–Mart, given that the single alleged injury arose out of the same operative facts.