NUMBER 13-05-00064-CV


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


DONALD STREICH, Appellant,


v.
 




JOSEPH DOUGHERTY, M.D., Appellee.

 


On Appeal from the 197th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION ON REHEARING



Before Chief Justice Valdez and Justices Rodriguez and Benavides (1)


Memorandum Opinion on Rehearing by Chief Justice Valdez



 Appellee, Joseph Dougherty, M.D., has filed a motion for rehearing en banc. We
construe this motion as requesting both further rehearing and en banc reconsideration. 
See Tex. R. App. P. 49.7 (en banc reconsideration); Brookshire Bros., Inc. v. Smith, 176
S.W.3d 30, 39 (Tex. App.-Houston [1st Dist.] 2005, pet. denied) (op. on reh'g), cert.
denied, Smith v. Brookshire Bros., Inc., 127 S. Ct. 256, 166 L. Ed. 2d 150, 2006 U.S.
LEXIS 7210, *1 (Oct. 2, 2006). After due consideration of appellee's arguments, we grant
appellee's motion for rehearing and dismiss as moot appellee's motion for rehearing en
banc. We withdraw our previous memorandum opinion and judgment, and issue the
following memorandum opinion and judgment in their stead. 

 Appellant, Donald Streich, appeals from the trial court's order granting summary
judgment in favor of appellee, Joseph Dougherty, M.D., on a medical malpractice suit. (2) In
the sole issue presented, appellant claims the trial court erred in granting summary
judgment. We affirm the judgment.

I. Background

 Appellant was diagnosed with congestive heart failure and end-stage renal disease. 
Appellant was admitted to Valley Baptist Medical Center and, on November 3, 1999, Dr.
Ruben Lopez inserted a Schon catheter into appellant's internal jugular vein for the
purposes of beginning dialysis. Appellant began dialysis under the care of Dr. Dougherty,
a nephrologist. Appellant was discharged from Valley Baptist on November 5, 1999.

 On November 6, 1999, appellant was again admitted to Valley Baptist complaining
of fever and chills. On November 8, 1999, a lab report showed that a blood culture taken
from the catheter site and drainage of the dialysis catheter was positive for staphylococcus
aureus. On November 12, 1999, Lopez removed the Schon catheter and inserted a left
Quinton catheter. On November 14, 1999, appellant told Dr. Dougherty that he was
experiencing low back pain. On November 16, 1999, Dr. Dougherty discharged appellant
with orders to continue outpatient dialysis. Appellant continued to experience back pain. 
 On November 29, 1999, Dr. Jerry Palleres performed a CT scan of appellant's
lumbar spine and concluded that appellant had an atypical compression fracture. On
January 8, 2000, Dr. Dougherty told appellant that he had a hairline crack in one of the
vertebrae of his tail bone and that his pain would improve gradually. Appellant continued
to experience back pain, and on February 5, 2000, Dr. Dougherty referred him to a pain
center and requested that nerve conduction studies be performed. 

 Appellant's back pain continued, and he developed pain in his hips and discomfort
and numbness in his legs. Appellant further developed weakness of the lower extremities
such that he could not walk. Appellant continued to keep his physicians informed
regarding his symptomology.

 Dr. Dougherty saw appellant on February 27, 2000, and admitted him to Valley
Baptist the following day for observation. Dr. Dougherty referred appellant to Dr. Gale
Downey, a neurologist, for a consultation regarding appellant's leg pain. On February 29,
2000, Downey performed an MRI of appellant's lower spine. The MRI revealed an epidural
mass. On March 1, 2000, Dr. Dougherty referred appellant to Dr. Brent Clyde, a
neurosurgeon, who found a lytic lesion at the L4 vertebrae. Clyde recommended surgery. 
 On March 2, 2000, Dr. Eric Six, a neurosurgeon, performed surgery on the lesion
and discovered a large volume of pus, which had developed over time, primarily at the L3
and L4 vertebrae. Cultures taken on March 2, 2000 showed the presence of
staphylococcus aureus. Appellant was later informed that this infection was the result of
the earlier surgery to insert his catheter. (3)

 On February 27, 2002, appellant sent an article 4590(i) notice letter to Dr. Dougherty
and other medical providers informing them that a health care liability claim was under
consideration. According to the notice, the claim against Dr. Dougherty and others was a
result of negligence in the operative and post-operative care provided to appellant for a
surgery performed on November 3, 1999, resulting in infection and an epidural abscess. 
Appellant subsequently filed suit on April 9, 2002. 

II. Motion for Summary Judgment

 Dr. Dougherty's motion for summary judgment was premised both on traditional and
no evidence grounds. In his traditional motion, Dr. Dougherty moved for full or partial
summary judgment on grounds that the statute of limitations barred all of appellant's
causes of action or, in the alternative, barred any alleged negligence that occurred prior
to February 27, 2000. In his no evidence motion for summary judgment, Dr. Dougherty
argued that appellant had no evidence of duty, breach of duty, or proximate causation. 

 The trial court's order granting summary judgment does not specify the basis for its
ruling. Because Dr. Dougherty moved for summary judgment on both traditional and no
evidence grounds and the trial court did not specify which it granted, we can uphold the
summary judgment on either ground. See Bruce v. K.K.B., Inc., 52 S.W.3d 250, 254 (Tex.
App.-Corpus Christi 2001, pet. denied); see also FNFS, Ltd. v. Sec. State Bank & Trust,
63 S.W.3d 546, 548 (Tex. App.-Austin 2001, pet. denied).

 When a party moves for summary judgment under both rules 166a(c) and 166a(i)
of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under
the standards of rule 166a(i). Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex.
2004); see Tex. R. Civ. P. 166a(c), (I). If the appellant fails to produce more than a scintilla
of evidence under that burden, then there is no need to analyze whether appellee's
summary judgment proof satisfies the less stringent rule 166a(c) burden. Id.

III. No Evidence Motion for Summary Judgment


 A no evidence motion for summary judgment is essentially a pretrial motion for
directed verdict, and the appellate court will apply the same standard of review. Zapata
v. Children's Clinic, 997 S.W.2d 745, 747 (Tex. App.-Corpus Christi 1999, pet. denied);
Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998, pet. denied).
We "examine the entire record in the light most favorable to the nonmovant, indulging
every reasonable inference and resolving any doubts against the motion." City of Keller
v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005); see Whalen v. Condo Consulting & Mgmt.
Servs., Inc., 13 S.W.3d 444, 446 (Tex. App.-Corpus Christi 2000, pet. denied). The
nonmovant need not "marshal its proof," rather, it "need only point out evidence that raises
a fact issue on the challenged elements." Tex. R. Civ. P. 166a(i) cmt. When a motion for
summary judgment is based on no evidence grounds, the Texas Supreme Court has
ordered that:

 1. the no-evidence motion can only be brought against "a claim or
defense on which an adverse party would have the burden of proof at
trial;"


 2. "the motion must state the elements as to which there is no
evidence;"


 3. "the motion must be specific in challenging the evidentiary support for an
element of a claim;" and


 4. "paragraph (i) does not authorize conclusory motions or general no-evidence
challenges to an opponent's case."

 

Tex. R. Civ. P. 166a(i), 166a(i) cmt.; see Oasis Oil Corp. v. Koch Ref. Co., 60 S.W.3d 248,
250 (Tex. App.-Corpus Christi 2001, pet. denied).

 "The trial court may not grant a no-evidence summary judgment if the respondent
brings forth more than a scintilla of probative evidence to raise a genuine issue of material
fact." Oasis Oil Corp., 60 S.W.3d at 250; Zapata, 997 S.W.2d at 747. Evidence that is "so
weak as to do no more than create a mere surmise or suspicion" of a fact is legally
insufficient and constitutes no evidence. Moore, 981 S.W.2d at 269 (quoting Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists
when the evidence "rises to a level that would enable reasonable and fair-minded people
to differ in their conclusions." Merrell Dow Pharm., Inc v. Havner, 953 S.W.2d 706, 711
(Tex. 1997); Zapata, 997 S.W.2d at 747.

 In his no evidence motion for summary judgment, Dr. Dougherty alleged that
appellant had no evidence of duty, breach of duty, and proximate causation as required
in a medical negligence cause of action. According to the no evidence motion, the
deadline for appellant's designation of experts had passed and appellant had failed to
designate experts to testify that Dr. Dougherty's care and treatment of appellant after
February 27, 2000 deviated from the standard of care. In response to the motion for
summary judgment, appellant produced the deposition testimony of his expert witness, Dr.
Allen I. Arieff.

 On appeal, Dr. Dougherty contends that appellant did not offer even a scintilla of
evidence that Dr. Dougherty was negligent in his treatment of appellant after February 27,
2000. According to Dr. Dougherty, appellant focuses only on the care rendered by Dr.
Dougherty between November 3, 1999, and February 24, 2000, all of which was barred by
the applicable statute of limitations. 

 The elements that must be proven for a medical malpractice action are: (1) a
physician's duty to act according to a certain standard; (2) a breach of the applicable
standard of care; (3) an injury; and (4) a causal connection between the breach of care and
the injury. Krishnan v. Ramirez, 42 S.W.3d 205, 212 (Tex. App.-Corpus Christi 2001, pet.
denied); Smith v. Mossbacker, 94 S.W.3d 292, 294 (Tex. App.-Corpus Christi 2002, no
pet.); Schorlemer v. Reyes, 974 S.W.2d 141, 147 (Tex. App.-San Antonio 1998, pet.
denied). 

 Duty in a medical malpractice case is triggered by the existence of a
physician-patient relationship. St. John v. Pope, 901 S.W.2d 420, 423 (Tex. 1995). A
physician-patient relationship comes into being only upon a physician's express or implied
consent. See id. Where no prior relationship exists, the doctor must take some affirmative
step to treat the patient before a relationship can be established. See Ortiz v. Shah, 905
S.W.2d 609, 611 (Tex. App.-Houston [14th Dist.] 1995, writ denied); Lopez v. Aziz, 852
S.W.2d 303, 306 (Tex. App.-San Antonio 1993, no writ). "The duty to treat the patient with
proper professional skill flows from the consensual relationship between the patient and
physician, and only when that relationship exists can there be a breach of a duty resulting
in medical malpractice." St. John, 901 S.W.2d at 423; see Ramirez v. Carreras, 10 S.W.3d
757, 761 (Tex. App.-Corpus Christi 2000, pet. denied). Once such a relationship exists,
however, the physician then owes the patient a duty to treat him or her with the skills of a
trained, competent professional, and a breach of that duty may give rise to a malpractice
action. Reynosa v. Huff, 21 S.W.3d 510, 513 (Tex. App.-San Antonio 2000, no pet.).

 The threshold question in a medical malpractice case is the standard of care. Jones
v. Miller, 966 S.W.2d 851, 854 (Tex. App.-Houston [1st Dist.] 1998, no pet.). The
applicable standard must be established so the fact finder can decide if the defendant
deviated from it. Id. To raise a fact issue sufficient to defeat summary judgment, the
plaintiff's controverting expert should specifically identify the standard of care, establish the
expert's familiarity with that standard, and explain why the treatment rendered by the
defendant health-care provider breached the applicable standard. Hightower v. Saxton,
54 S.W.3d 380, 389 (Tex. App.-Waco 2001, no pet.); Keeton v. Carrasco, 53 S.W.3d 13,
25 (Tex. App.-San Antonio 2001, pet. denied).

 In order to be a proximate cause, the negligence must have been a substantial
factor in bringing about the harm and without which, the harm would not have occurred. 
Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush, 122 S.W.3d 835, 852 (Tex.
App.-Fort Worth 2003, pet. denied); Sisters of St. Joseph of Tex., Inc. v. Cheek, 61
S.W.3d 32, 35 (Tex. App.-Amarillo 2001, pet. denied). To establish proximate cause, a
plaintiff must prove both cause-in-fact and foreseeability. Duff v. Yelin, 751 S.W.2d 175,
176 (Tex. 1988). Cause-in-fact requires a causal connection between the injuries suffered
and the negligence of appellants based upon "reasonable medical probability," not mere
conjecture, speculation, or possibility. See Park Place Hosp. v. Estate of Milo, 909 S.W.2d
508, 511 (Tex. 1995). For an injury to be foreseeable, "a person of ordinary intelligence
should have anticipated the danger created by a negligent act or omission." Doe v. Boys
Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995). 

 In the instant case, the medical records and deposition testimony clearly indicate
that Dr. Dougherty and appellant had a physician-patient relationship and that Dr.
Dougherty provided appellant a course of treatment from November of 1999 through
August of 2000. Accordingly, Dr. Dougherty owed appellant a duty to treat him with the
skills of a trained, competent professional. Reynosa, 21 S.W.3d at 513. 

 Dr. Arieff testified regarding the applicable standard of care. His testimony
established his familiarity with that standard, and he explained why the treatment rendered
by Dr. Dougherty breached the applicable standard. Hightower, 54 S.W.3d at 389; Keeton,
53 S.W.3d at 25. In short, Arieff testified that Dr. Dougherty did not provide adequate post-surgical treatment of appellant's condition and that an adequate post-surgical course of
treatment would have remedied appellant's infection associated with the insertion of his
catheter. Dr. Arieff specifically detailed the symptomology that appellant suffered and the
protocols that could have identified the infection. He offered evidence that a reasonably
careful nephrologist would have investigated appellant's progressive neurological disability
by ordering neuroimaging studies, requesting a gallium scan or an indium scan, or
consulting a neurosurgeon or neurologist. Dr. Arieff further testified that Dr. Dougherty's
failure to properly treat and diagnose the infection resulted in appellant's multiple surgeries
and disability. 

 We conclude that appellant produced evidence raising a fact issue on the elements
of duty, breach of duty, and proximate cause. See Tex. R. Civ. P. 166a(i). Accordingly,
the trial court could not properly have granted the no evidence motion for summary
judgment on these grounds. 

 On appeal, Dr. Dougherty contends that the record contains no evidence that he
was negligent in his care subsequent to February 27, 2000, or that any such negligence
proximately caused appellant's damages. To obtain no-evidence summary judgment on
a claim, appellee was required to "state the elements as to which there is no evidence." 
See Tex. R. Civ. P. 166a(i) & cmt. In addition, the district court could not grant summary
judgment on grounds not expressly raised in appellee's summary judgment motion. See,
e.g., Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 204 (Tex. 2002); Chessher v.
Southwestern Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983); Trilogy Software, Inc. v.
Callidus Software, Inc., 143 S.W.3d 452, 469 n.15 (Tex. App.-Austin 2004, pet. filed). 
Appellant would have had no obligation to present evidence regarding claims not
specifically challenged. See McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337,
342 (Tex. 1993). 

 Appellee's motion for summary judgment based on no evidence concerned the
elements of duty, breach of that duty, and proximate causation. Appellee's claims
regarding the statute of limitations were not raised in his no evidence motion for summary
judgment, but were instead argued in his traditional motion for summary judgment. 
Accordingly, the trial court could not have properly granted the no evidence summary
judgment on the basis of limitations. See id. 

III. Traditional Motion for Summary Judgment

 We review the trial court's granting of a traditional motion for summary judgment de
novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Alejandro v. Bell,
84 S.W.3d 383, 390 (Tex. App.-Corpus Christi 2002, no pet.). To prevail on a summary
judgment motion, a moving party must establish that no genuine issue of material fact
exists and judgment should be granted as a matter of law. Shah v. Moss, 67 S.W.3d 836,
842 (Tex. 2001). In deciding whether there is a genuine issue of material fact, we resolve
any doubt against the movant, and view the evidence in a light most favorable to the
nonmovant. Id.

 A defendant moving for summary judgment on the affirmative defense of a tolled
limitation statute has the burden of conclusively establishing that defense. KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). A
defendant must (1) conclusively prove when the action accrued, and (2) negate the
discovery rule if it applies and has been pleaded or raised. Id. If the movant establishes
that the statute of limitations bars the action, the nonmovant must then offer proof raising
a fact issue to avoid summary judgment. Id.

 In this case, Dr. Dougherty moved for full or partial summary judgment on all of
appellant's causes of action or, in the alternative, for any alleged negligence that occurred
prior to February 27, 2000. In his motion for summary judgment, appellee contends that
appellant's causes of action are barred by limitations because the treatment complained
of occurred between November 3, 1999, and February 27, 2000, more than two years
before suit. According to appellee, all allegations of negligence which occurred prior to
February 27, 2000, were barred by the statute of limitations. Dr. Dougherty further
contends that appellant failed to present any summary judgment evidence that appellee
was negligent after February 27, 2000, or that such post February 27, 2000, negligence
proximately caused appellant's alleged damages. 

 Because this case was originally filed before September 1, 2003, former article
4590i, section 10.01 of the Texas Revised Civil Statutes governs this case. Act of May 30,
1977, 65th Leg., R.S., ch. 817, § 1.01-12.01, 1977 Tex. Gen. Laws 2039-2053 (as
amended) (henceforth "Former Tex. Rev. Civ. Stat. art. 4590i"), repealed by Act of June
2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version
at Tex. Civ. Prac. & Rem. Code Ann. § 74.001 et seq. (Vernon Supp. 2006)). Former
article 4590i, section 10.01, in pertinent part, provides: 

 Notwithstanding any other law, no health care liability claim may be
commenced unless the action is filed within two years from the occurrence
of the breach or tort or from the date the medical or health care treatment
that is the subject of the claim or the hospitalization for which the claim is
made is completed . . . .


Former Tex. Rev. Civ. Stat. art. 4590i, § 10.01. 

 The former statute created a two-year limitations period in which to bring suit on
health care liability claims. See id.; Kimball v. Brothers, 741 S.W.2d 370, 372 (Tex. 1987). 
Under the statute, commencement of limitations begins on one of three dates: (1) the
occurrence of the breach or tort; (2) the date the medical or health care treatment that is
the subject of the claim is completed; or (3) the date the hospitalization for which the claim
is made is completed. See Former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01; Shah v.
Moss, 67 S.W.3d 836, 841 (Tex. 2001); Kimball v. Brothers, 741 S.W.2d 370, 372 (1987). 
 A plaintiff may not simply choose the most favorable date that falls within this
provision, rather, if the specific date of the alleged tort is ascertainable, the limitations
period commences upon that date. Shah, 67 S.W.3d at 841; Earle v. Ratliff, 998 S.W.2d
882, 886 (Tex. 1999). In other words, if the date of the occurrence of the breach or tort is
ascertainable, then an inquiry into the second and third categories is unnecessary. Shah,
67 S.W.3d at 841. If the date is not ascertainable, the plaintiff must establish a course of
treatment for the alleged injury in which the last treatment date becomes relevant to
determining when limitations begins. Id. In such a case, the commencement of the
limitation period occurs on the last date appellee treated appellant and had a chance to
perform his alleged duties. See id. at 843. However, if the date of the alleged tort is
ascertainable, limitations begin to run on that date whether or not the plaintiff established
a course of treatment. Id. at 841. When a physician fails to diagnose a condition, the
continuing nature of the diagnosis does not extend the tort for limitations purposes.
Rowntree v. Hunsucker, 833 S.W.2d 103, 108 (Tex. 1992). While the failure to treat a
condition may well be negligent, the failure to establish a course of treatment does not
constitute a course of treatment. Id. at 105-06. 

 By virtue of section 4.01 of the former act, a person could extend the two-year
limitations period for seventy-five days by giving notice of a claim under the Act. 
See Former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 4.01; De Checa v. Diagnostic Ctr.
Hospital, Inc., 852 S.W.2d 935, 937-38 (Tex. 1993) (notice given in accordance with
section 4.01(a) tolls the applicable statute of limitations for seventy-five days, effectively
creating a two-year-and-seventy-five-day statute of limitations); Theroux v. Vick, 163
S.W.3d 111, 114-15 (Tex. App.-San Antonio 2005, pet. denied). Generally, a suit may not
be filed outside this extended limitations period. De Checa, 852 S.W.2d at 938. Moreover,
notice under former section 4.01 could not toll a limitations period that had already
elapsed. Id. at 938 n.4. 

 According to Dr. Dougherty's brief:

 Appellee firmly and conclusively established that, since Appellant's notice
letter was sent on February 27, 2002 and no suit was filed prior to February
27, 2002, all alleged negligence occurring on or before February 27, 2000 is
absolutely barred by the two year statute of limitations pursuant to § 10.01
of the Texas Medical Liability and Insurance Improvement Act.


Dr. Dougherty appears to be contending that the date appellant sent his notice letter has
some impact on the accrual of appellant's cause of action. We do not agree. The notice
letter does not establish the accrual date of the cause of action for limitations purposes;
rather, its purpose is to toll limitations once the cause of action has accrued. Likewise,
suits based on the conclusion of a course of medical or health care treatment are based
on the course of treatment and not the completion of treatment. As stated previously,
limitations begin to run on: (1) the occurrence of the breach or tort; (2) the date the
medical or health care treatment that is the subject of the claim is completed; or (3) the
date the hospitalization for which the claim is made is completed. See Former Tex. Rev.
Civ. Stat. Ann. art. 4590i, § 10.01; Shah, 67 S.W.3d at 841.

 According to the summary judgment evidence, appellant was examined by Dr.
Dougherty over the course of multiple occasions spanning from November of 1999 until
the infection was finally diagnosed on March 2, 2000. Appellant contends that appellee's
alleged negligent failure to diagnose and treat the infection allegedly occurred over the
span of those dates. According to appellant, while individual dates of examination and
treatment are readily ascertainable, as they are in all course of treatment cases, the failure
occurred over the whole course of treatment and no single date for the failure can be
ascertained. 

 We must disagree. In this case, the dates of the alleged negligence are readily
ascertainable. Husain v. Khatib, 964 S.W.2d 918, 919-20 (Tex. 1998). It is therefore
immaterial whether appellant established a course of treatment or whether the tort is
characterized as a failure to diagnose the infection or as an improper course of treatment
based on a misdiagnosis of the infection as a compression fracture. Id. 

 Appellant's complaint is that appellee was negligent in not taking actions, such as
conducting more tests, including an MRI of the spinal column or gallium or indium scans
to localize the site of the abscess, obtaining a blood culture, and ordering bone scans, that
would have led to earlier discovery of the infection. Those events, or omissions, occurred
on specific ascertainable dates when appellee saw appellant. That is, the alleged
negligence could only have occurred on the dates that appellee treated appellant before
he was properly diagnosed. See Bala v. Maxwell, 909 S.W.2d 889, 892 (Tex. 1995)
(concluding that doctor could have breached the duty to perform additional tests only when
he examined patient); Rowntree, 833 S.W.2d at 108 (holding that doctor could have
breached duty to perform proper examinations only on those occasions when he had
opportunity to perform such examinations); Rogers v. United Reg'l Health Care Sys., 109
S.W.3d 47, 51 (Tex. App.-Fort Worth 2003, no pet.); Karley v. Bell, 24 S.W.3d 516, 520
(Tex. App.-Fort Worth 2000, pet. denied). 

 On February, 27, 2000, appellee saw appellant and admitted him to the hospital the
following day for the examinations and testing that detected the infection. Appellee did
exactly what appellant contends he should have done previously. Therefore, any
negligence could only have occurred at the latest at the last examination prior to this date. 
Husain, 964 S.W.2d at 920; see Bala, 909 S.W.2d at 891-92; Gilbert v. Bartel, 144 S.W.3d
136, 142 (Tex. App.-Fort Worth 2004, pet. denied). 

 The record contains no allegations or evidence that the appellee was negligent in
his treatment of appellant after he was properly diagnosed with the infection. Therefore,
appellant is not entitled to use the last date of the relevant course of treatment as the
beginning date for the statute of limitations. See Bala, 909 S.W.2d at 892; Rowntree, 833
S.W.2d at 108; Karley, 24 S.W.3d at 520-21. 

 Because the last date on which appellee could have been negligent was prior to
February 27, 2000, and appellant did not file this action until April 9, 2002, the two-year
statute of limitations bars his claim. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01.
Because appellant filed his claim after the statute of limitations had already expired, he is
not entitled to use the tolling provision in section 4.01(c), which tolls the statute of
limitations for seventy-five days if the plaintiff provides notice of the claim to the health care
provider at least sixty days before filing suit. See id. § 4.01(a); De Checa, 852 S.W.2d at
938 n.4 (stating that notice cannot toll a limitations period that has already elapsed). 
Therefore, we conclude that summary judgment was properly granted on the issue of
limitations. Appellant's sole issue is overruled.

V. Conclusion

 We affirm the judgment of the trial court.


 _______________________

 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion on Rehearing delivered

and filed this the 11th day of December, 2008.

 

1. The Honorable Errlinda Castillo, who was originally assigned to this panel but whose term of office
expired on December 31, 2006, did not participate in this opinion. She was replaced on panel by Justice Gina
Benavides pursuant to the appellate rules. See Tex. R. App. P. 41.1(a).
2. Other aspects of this case have previously been addressed by this Court in Streich v. Pallares, No.
13-02-698-CV, 2005 Tex. App. LEXIS 5224 (Tex. App.-Corpus Christi 2005, no pet.), and Streich v. Lopez,
No. 13-02-074-CV, 2004 Tex. App. LEXIS 7703 (Tex. App.-Corpus Christi Aug. 26, 2004, no pet.). 
3. Appellant's claims against Dr. Dougherty do not involve allegations regarding the surgery or the
causation of the infection. Instead, appellant's claims against Dr. Dougherty involve his post-surgical course
of treatment.