# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 11, 2011 Session

## DORIS HINKLE, ET AL. V. KINDRED HOSPITAL, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 10C2397      Thomas W. Brothers, Judge**

---

**No. M2010-02499-COA-R3-CV - Filed August 31, 2012**

---

The widow of a man who suffered a devastating injury while undergoing a medical procedure in the defendant hospital filed suit against the hospital and the doctor who ordered the procedure, claiming medical malpractice, failure to obtain informed consent, and battery. The defendant hospital filed a motion for summary judgment, and the defendant doctor filed a motion to dismiss, both arguing that the plaintiff's malpractice claims had to be dismissed because she failed to strictly comply with requirements of the Medical Malpractice Act, specifically Tenn. Code Ann. § 29-26-121 (a)(1) (60-day notice) and §29-26-122(a) (certificate of good faith). The trial court granted both motions in part and denied them in part. We reverse the trial court's dismissal of the medical malpractice claims against both defendants as well as the related claims. We also reverse the trial court's dismissal of the claim against the defendant doctor for failure to obtain the patient's informed consent, but we affirm its dismissal of the medical battery claim against the defendant doctor.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Reversed in Part, Affirmed in Part, and Remanded

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT joined. RICHARD H. DINKINS, J., filed a concurring in part and dissenting in part opinion.

Bede O. M. Anyanwu, Jackson, Tennessee, for the appellant, Doris Hinkle, Executrix of the estate of Muriel Jesse Hinkle deceased, and Doris Hinkle.

Heidi Anne Barcus, Hillary Browning Jones, Daniel T. Swanson, Knoxville, Tennessee, for the appellee, Dr. Tuan Quoc Nguyen; Harry Peoples Ogden, Kenny L. Saffles, Carrie C. McCutcheon, Knoxville, Tennessee, for the appellee, Kindred Hospital.

**OPINION**

## I. BACKGROUND

This case arose from a severe physical injury suffered by Mr. Muriel Jesse Hinkle in his first day as a patient at the defendant Kindred Hospital. The following account of the events leading up to and following that injury is largely derived from the allegations of the complaint. Since the proceedings below were decided on a motion for summary judgment and a motion to dismiss, we must take those allegations as true for the purposes of this appeal.

Mr. Hinkle underwent an elective aneurysm repair and a cardiac bypass at Vanderbilt University Medical Center. He suffered some post-surgical complications which required ventilator support and the placement of a tracheotomy. He remained at Vanderbilt for two weeks. On June 29, 2009, he was transferred to the defendant Kindred Hospital for rehabilitation and to wean him off the ventilator. Prior to his discharge and transfer, he was given a laxative, resulting in a soft stool that was controlled with bed pads at Vanderbilt.

When Mr. Hinkle arrived at Kindred Hospital, the defendant Dr. Tuan Quoc Nguyen ordered that a Bowel Management System (BMS) rectal tube be inserted in his rectum.[1] When the nursing staff arrived to perform the procedure, Mr. Hinkle refused to allow the insertion of the tube. Because the tracheotomy tube left him unable to speak, he signaled his refusal with hand gestures. Mr. Hinkle's sixteen year old son, who was also present in the room, told the staff that Mr. Hinkle did not want the BMS tube to be inserted and did not consent to the procedure. But the young man was ordered to leave the room immediately so the medical staff could insert the tube.

Mr. Hinkle's wife, Doris Hinkle, had a power of attorney to make medical decisions on behalf of her husband. But she was not at Kindred Hospital when her husband arrived. She arrived half an hour after the BMS tube was inserted in her husband's rectum. After she arrived, she signed a three page Admission Agreement that included a general consent for

---

[1]Dr. Nguyen filed an affidavit which stated that "[u]pon Mr. Hinkle's admittance to Kindred Hospital I performed a history, and physical on Mr. Hinkle. Additionally, I interviewed Mr. Hinkle's spouse." However, Mrs. Hinkle claimed that she did not arrive at Kindred Hospital until after the procedure ordered by Dr. Nguyen had been performed.

treatment.  The following day, she signed an Alternate Dispute Resolution agreement.

Upon insertion of the BMS tube, Mr. Hinkle immediately experienced excruciating pain in his rectum and started to bleed.  He bled profusely the next day because parts of the BMS tube had separated.  The hospital staff tried to correct the problem, but could not.  On July 1, 2009, the attending physician transferred Mr. Hinkle to Vanderbilt Medical Center by ambulance, because Kindred Hospital did not have the equipment needed to remove the part of the tube that remained in the patient's rectum.

Mr. Hinkle underwent four surgical procedures at Vanderbilt Medical Center to repair his rectal wall, which had been damaged by the BMS tube insertion.  He also received numerous transfusions because of the blood loss he had suffered. Although he was eventually released from the hospital, the injury he suffered continued to negatively affect the quality of his life.  He suffered incontinence and impotence, had to wear a diaper, could not swim or bathe like every one else, and faced public embarrassment.  Mr. Hinkle passed away on March 29, 2010, at the age of 46.

## II. LEGAL PROCEEDINGS

Mr. and Ms. Hinkle retained an attorney prior to Mr. Hinkle's death.  The attorney sent a registered letter to the Chief Administrator of Kindred Hospital, Mike Moody, on November 5, 2009.  The attorney recited the basic facts regarding the incident with the BMS tube and stated that his clients had contacted the administrator repeatedly to try to resolve the matter, but that the administrator had failed to acknowledge their concerns.  He warned that if the administrator failed to respond to his letter within seven days of its receipt, his clients would have "no other option, but to resort to the legal forum to resolve this matter."

On November 12, 2009, the Hinkles' attorney received a letter from the hospital's attorney acknowledging receipt of the letter of November 5 and setting out contact information for future communications.  A subsequent exchange of letters showed that the parties shared relevant medical information.  Mr. Hinkle's medical records from Vanderbilt Medical Center were sent to the Hospital's attorney and the medical records from Kindred Hospital were sent to the Hinkles' attorney.  Settlement negotiations were also conducted by letter.  Mr. Hinkle died in the midst of those negotiations.

The Kindred Hospital website and its letterhead stationery listed Dr. Nguyen as a member of its medical staff.  Ms. Hinkle's attorney sent a registered letter to the doctor on April 9, 2010 using the hospital's address, with return receipt requested.  The letter was returned undelivered.  On April 23, 2010, the attorney faxed a copy of the letter to Dr. Nguyen at Kindred Hospital's fax number.  On April 27, 2010, Ms. Hinkle's attorney

received a letter from the hospital's attorney, stating that the faxed letter had been sent to Dr. Nguyen's employer.[2] On May 4, 2010, Dr. Nguyen's professional liability insurer sent a letter to Mr. Hinkle's attorney, giving the name of a claims specialist representing Dr. Nguyen's interests in the matter, and asking for copies of his medical records and a signed HIPAA[3] release for medical information. The documents were sent as requested to the insurance company.

On June 28, 2010, Doris Hinkle (hereinafter "Plaintiff") filed a complaint individually and as executor of her late husband's estate against Kindred Hospital and Dr. Nguyen. Although the negotiations between the parties had not yet ended, Plaintiff asserts that the complaint was filed in order to prevent the statute of limitations from extinguishing her legal remedies. The complaint recited the operative facts set out above and asserted claims against both defendants for medical malpractice, lack of informed consent, battery, failure to train and supervise, and loss of consortium. The complaint also declared that notice of the potential claim had been given to the defendants by registered mail on November 5, 2009 and April 9, 2010.

The complaint was accompanied by the affidavit of Dr. Gift Eze, a doctor of internal medicine practicing in Jackson, Tennessee. Dr. Eze stated that he had knowledge and experience of the standard of medical care for patients with diarrhea, including the placement and use of the Bowel Management System device and similar rectal tubes. He testified that it was a breach of the standard of care for a doctor to order insertion of a BMS tube without first-hand knowledge of the condition of the patient's rectum, that Mr. Hinkle was not an appropriate candidate for the procedure because of a prolapsed hemorrhoid, and that the nursing staff had improperly inserted the tube.

Kindred Hospital responded to each of the claims raised by Ms. Hinkle in a motion for summary judgment filed on August 23, 2010. The hospital asserted that Plaintiff had failed to fulfill the statutory notice requirements for filing a medical malpractice claim set out in Tenn. Code Ann. § 29-26-121 and § 29-26-122; that Kindred Hospital had no legal duty to obtain informed consent; that there was no battery because there was a signed consent for treatment; that failure to train and supervise and loss of consortium were not independent causes of action, but were derived from the underlying claim for medical malpractice; and

_____

[2]The hospital's attorney stated at oral argument that Dr. Nguyen was never directly employed by the hospital but rather by a staffing company that furnished it with medical personnel.

[3]HIPAA is the Health Insurance Portability and Accountability Act of 1996, a federal statute which, among other things, establishes uniform national standards for the protection of patient privacy and for the proper use and disclosure of patient information.

that those derivative claims therefore had to be dismissed because of the statutory defects in the filing of the malpractice claims.

Dr. Nguyen filed a motion to dismiss for failure to state a claim under Tenn. R. Civ. P. 12.02(6) on August 25, 2010. He repeated essentially the same arguments that had been presented in the Hospital's motion, with most of the focus likewise on the plaintiff's alleged failure to fully comply with the requirements of the Medical Malpractice Act set out in Tenn. Code Ann. § 29-26-121 and § 29-26-122.

The hearing on the two motions was conducted on October 15, 2010. The defendants argued that strict compliance with every provision of the two cited statutes was required, and that Plaintiff fell short of such compliance. For her part, Plaintiff argued that because the proof showed that both defendants had been made aware of her claims more than sixty days before she filed her complaint, they received adequate notice under Tenn. Code Ann. § 29-26-121, even if that notice did not comply in every respect with the guidelines set out in the statute. She further argued that the affidavit of Dr. Eze satisfied (and even went beyond) the requirement of the filing of a certificate of good faith, as set out in Tenn. Code Ann. § 29-26-122.

The trial court filed an order on November 2, 2010, dismissing Plaintiff's lack of informed consent claim against the hospital with prejudice, holding that it was not the hospital's role to obtain informed consent from the patient. However, it denied the hospital's motion to dismiss the battery claim, because there was a genuine issue of material fact as to whether the consent form signed by Ms. Hinkle was effective to give the hospital's employees retroactive consent to perform the invasive procedure from which this case arose. The court also dismissed the plaintiff's battery claim against Dr. Nguyen with prejudice because there were no allegations that Dr. Nguyen had actually touched Mr. Hinkle at any time.

As for the medical malpractice claims against both defendants and the other claims derived from it (failure to train or supervise and loss of consortium), the court dismissed those claims, but without prejudice. The court reasoned that while the plaintiff did not fully comply with the notice requirements of Tenn. Code Ann. § 29-26-121, Dr. Eze's affidavit "complies with the underlying concept of the good faith certificate found in 29-26-122."

The court then noted that while Tenn. Code Ann. § 29-26-122 specifically states that a failure to provide a certificate of good faith makes a complaint subject to dismissal with prejudice, Tenn. Code Ann. § 29-26-121 contains no such language regarding a dismissal for failure to satisfy the notice requirements. The court concluded that it could therefore dismiss the malpractice claims without prejudice, relying on its implied power to do so under Tenn.

R. Civ. P. 41.02(3). The court then declared its order to be final in accordance with Tenn. R. Civ. P. 54.02.

### III. THE STANDARD OF REVIEW

The resolution of the primary issues on appeal in this case hinges on statutory interpretation. Construction of a statute is a question of law which the appellate courts review *de novo* without a presumption of correctness. *Hill v. City of Germantown*, 31 S.W.3d 234, 237 (Tenn. 2000). The standard of review is likewise *de novo* with no presumption of correctness accorded to the decision of the trial court on either a motion for summary judgment or a motion to dismiss under Tenn. R. Civ. P. 12.02(6). See *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (summary judgment motion); *Stein v. Davidson Hotel*, 945 S.W.2d 714, 716 (Tenn. 1997) (motion to dismiss).

When interpreting a statute, the court must "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Hathaway v. First Family Financial Services, Inc.,* 1 S.W.3d 634, 640 (Tenn. 1999). We ascertain the intent of the legislature from the natural and ordinary meaning of the statutory language and in the context of the entire statute, without a forced construction that would limit or expand its scope. *James Cable Partners v. Jamestown*, 818 S.W.2d 338, 341 (Tenn. Ct. App. 1991).

A motion for summary judgment may only be granted when the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998).

To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). If the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of a genuine issue of material fact. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d at 84; *Hannan v. Alltel Publishing Co.*, 270 S.W.3d at 5; *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

In our review, we must consider the evidence presented at the summary judgment

stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Doe v. HCA Health Services, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Housing Authority v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001).

The sole purpose of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint itself, not the strength of the plaintiff's proof. *Willis v. Dept. of Corrections*, 113 S.W.3d 706, 710 (Tenn. 2003); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). For the purposes of such a motion, the moving party admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from those facts. *Winchester v. Little*, 996 S.W.2d 818, 821-22 (Tenn. Ct. App. 1998); *Smith v. First Union Nat'l Bank,* 958 S.W.2d 113, 115 (Tenn. Ct. App. 1997).

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Willis v. Dept. of Corrections*, 113 S.W.3d at 710; *Sullivant v. Americana Homes*, 605 S.W.2d 246 (Tenn. Ct. App. 1980). Such motions are not favored, and are rarely granted in light of the liberal pleading standards in the Tennessee Rules of Civil Procedure. *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992); *Barish v. Metropolitan Government*, 627 S.W.2d 953, 954 (Tenn. Ct. App. 1981).

## IV. THE MALPRACTICE CLAIMS

### A. The Sixty Day Notice Requirement

Tennessee Code Annotated §§ 29-26-121 establishes notice requirements for all medical malpractice claims filed on or after October 1, 2008, and, thus, apply to this action. Tenn. Code Ann. § 29-26-121(a)(1) states that "[a]ny person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state."

The purpose of the sixty day notice provision is "to give the defendant the opportunity to investigate and perhaps even settle the case before it is actually filed. At a minimum, it will give the defendant the opportunity to gather information before suit is filed and should eliminate the need for extensions of time to answer the complaint or slow-walk discovery." *Howell v. Claiborne and Hughes Health Center*, M2009-01683-COA-R3-CV, 2010 WL 2359651 at *14 (Tenn. Ct. App. May 27, 2010) (perm.app. granted Dec. 7, 2010, app. dismissed Jan. 19, 2011) (*citing* Day, John A., *Med Mal Makeover 2009 Act Improves on '08*,

45 Tenn. B.J. 14 (July 2009)).

It is undisputed that the Hinkles sent a registered letter to the Kindred Hospital administrator on November 5, 2009, with information about their prospective claim against it. It is likewise undisputed that the hospital's attorney responded with a letter dated November 12, 2009, that records were exchanged, and that negotiations over the claim proceeded from that date and continued for seven months until the filing of the complaint. The hospital asserts, however, that Ms. Hinkle did not strictly comply with all the provisions of Tenn. Code Ann. § 29-26-121, and, as a consequence, her complaint should be dismissed.

The defendant hospital points out, for instance, that the letter of November 5, 2009 did not include the full name and date of birth of Ms. Hinkle's late husband, nor did it include a HIPAA compliant medical authorization. Tennessee Code Annotated § 29-26-121 (a)(2) sets out the content of the required notice, including the full name and date of birth of the patient whose treatment is at issue, a HIPAA compliant medical authorization to enable the defendant to obtain complete medical records, and other information to fully apprise the potential defendant of the identities of other providers being sent notice.[4]

The hospital concedes, however, that its agents were at no time confused about the identity of the person from whose injuries this case arose or the identity of the plaintiff and her relationship to the injured party. The record also shows that the parties exchanged medical records months before the complaint was filed, and the hospital does not allege that any relevant medical records were withheld. In the months of discussion, the hospital never requested a HIPAA authorization.

As another example of Ms. Hinkle's failure to strictly comply with each provision of the notice statute, the hospital points out that the notice (the November 5, 2009 letter) was addressed to the administrator of the defendant hospital at the hospital's business address, but not to its agent for service of process, as is required by Tenn. Code Ann. § 29-26-121(a)(3)(B)(ii).

---

[4]Tenn. Code Ann. § 29-26-121(a)(2) reads in its entirety:
   The notice shall include:
   (A) The full name and date of birth of the patient whose treatment is at issue;
   (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
   (C) The name and address of the attorney sending the notice, if applicable;
   (D) A list of the name and address of all providers being sent a notice; and
   (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

It is true that Tennessee Code Annotated § 29-26-121 (a)(3) states that proper notice may be accomplished by either personal delivery to the health care provider or by the use of certified mail, return receipt requested. If the prospective claimant fully complies with the exacting procedures for service set out in the subsection under either method then "the requirement of service of written notice prior to suit is deemed satisfied."

In the event that the mails are used, Tennessee Code Annotated § 29-26-121 (a)(3)(B) specifies that one notice is to be sent to the provider's current business address and another is to be sent to the address for the provider maintained by the Tennessee Department of Health website if that address differs from the provider's current business address. If the provider is a corporation or other business entity, then notice is to be sent to both the provider's current business address and to the address of its agent for service of process. In the event that the mailings are returned undelivered from both addresses, then "within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient."

In this case, the November 5 letter was sent to the hospital, which is the business address where Mr. Hinkle received the medical care that is the subject of the lawsuit. No objection was made to any alleged failure of service on the agent for service of process, and it is clear there was no confusion as to which entity was the anticipated defendant in any future lawsuit. The hospital received actual notice. It seems to us that the technical requirements in the statute are intended to provide just that: notice of the claim. Any arguments regarding the method of giving notice would be relevant where the defendant asserts no notice was received. They are not, however, where there is no dispute that the defendant received actual notice.

Accordingly, we conclude that Ms. Hinkle complied with the notice requirements of the statute as to the defendant hospital.

Dr. Nguyen received notice of the potential lawsuit in a different manner from the hospital. Dr. Nguyen asserts that he was not working at the hospital in April of 2009 when the plaintiff attempted to give him notice by sending him a registered letter using the hospital's address, and he notes that the letter was returned undelivered. He also denies taking part in the negotiations between the plaintiff and Kindred Hospital.

The record shows, however, that on April 27, 2010, Kindred Hospital faxed Plaintiff's letter to Dr. Nguyen's employer, more than sixty days before the filing of the complaint. Dr. Nguyen's professional liability insurer subsequently sent a letter to the plaintiff's attorney, giving the name of a claims specialist representing his interests in the matter and asking for

-9-

copies of the relevant medical records and a signed HIPAA release for medical information, which were duly provided. Although Tenn. Code Ann. § 29-26-121 does not specifically endorse faxing as a method of giving notice, it appears to us that Dr. Nguyen got notice that sufficiently informed him of the claim.

Dr. Nguyen complains that notice of Plaintiff's potential claim was not sent to him at either his current practice address or his address as listed in the Tennessee Department of Health website. He does not deny, however, that the insurer was acting on his behalf when it entered into discussions with the plaintiff. Thus, despite his complaints about the manner in which he received it, the record shows that like the hospital, Dr. Nguyen received written notice of the claim against him at least sixty days before the filing of the medical malpractice complaint.

Accordingly, we again conclude that Ms. Hinkle complied with the notice requirements of Tenn. Code Ann. 29-26-121(a) with regard to Dr. Nguyen.

The notice statute provides that a person asserting a potential claim for medical malpractice give notice of the potential claim to the health care provider at least 60 days before a complaint is filed. Tenn. Code Ann. 29-26-121(a)(1). It further provides that certain specified documents will establish proof that will satisfy the requirement. Tenn. Code Ann. 29-26-121(a)(3). The statute does not preclude proof of delivery of the notice by other means. Neither the hospital nor the doctor disputes that they each received notice of the potential malpractice lawsuit at least 60 days before the complaint was filed.

## B. The Certificate of Good Faith Requirement

In addition to the notice requirements, all plaintiffs filing malpractice claims that require expert testimony under Tenn. Code Ann. § 29-26-115 must file, with the complaint, a certificate of good faith which states,

> (1) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:
> (A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and
> (B) Believe, based on the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to maintain the action consistent with the requirements of § 29-26-115 . . .

Tenn. Code Ann. § 29-26-122(a).

One of the purposes of the certificate of good faith is to weed out frivolous lawsuits before any party incurs substantial litigation expenses. *Jenkins v. Marvel*, 683 F.Supp.2d at 639. The filing of a certificate of good faith indicating that an expert has reviewed the claims and has certified that they are taken in good faith "satisfies the goal of attempting to ensure that suits proceeding through litigation have some merit." *Id.*

Plaintiff's attorney in the present case did not make use of the standard form,[5] nor did he file with the complaint any document entitled "certificate of good faith." Instead, he filed a detailed affidavit by a doctor with whom he had consulted.[6] The affidavit by Dr. Eze stated that he was licensed in Tennessee as a medical doctor, that he was board certified in internal medicine, that he practiced in Jackson, Tennessee, that he was familiar with the standard of care in Jackson and in Nashville, including the use of bowel management systems like the one used in this case, that in his opinion the use of the BMS system in this case was a deviation from the standard of care, and that as a result of that deviation, Mr. Hinkle suffered injuries which otherwise would not have occurred.

The trial court held that Dr. Eze's affidavit "complies with the underlying concept of the good faith certificate found in 29-26-122," and it deemed the lack of such a certificate to be harmless error at most. The defendants argue on appeal that the trial court erred, and that the lack of a certificate of good faith constitutes an independent basis for the dismissal of Plaintiff's malpractice claims.

We note that all the information that is required by the certificate of good faith is included in Dr. Eze's affidavit. By testifying that he was licensed as a medical doctor in the State of Tennessee, and that he is in active practice in the specialty of internal medicine in Madison County, Tennessee, he has demonstrated that he is competent to testify in this case under § 29-26-115.[7] By testifying that he is familiar with the relevant standard of care and

[5]To simplify the process of filing a certificate of good faith, the Administrative Office of the Courts has promulgated a standard form that simply requires the checking of a box and the signature of the plaintiff or the plaintiff's counsel to certify compliance with the statutory requirements.

[6]The plaintiff did file a certificate of good faith on September 3, 2010, no doubt in response to the defendants' motions to dismiss and for summary judgment.

[7]The relevant portion of Tenn. Code Ann. § 29-26-115 for the purpose of the certification of good faith is "the locality rule," which provides that an expert is only competent to testify about the standard of care in a Tennessee medical malpractice case if he or she is licensed to practice in this state or a contiguous
(continued...)

-11-

that he believes that Mr. Hinkle's injuries resulted from a deviation from that standard, he impliedly asserted the existence of a good faith basis to maintain a medical malpractice claim for those injuries. His affidavit also described in great detail the conduct that he believed deviated from the standard of care and how it caused Mr. Hinkle's injuries.

Dr. Eze's affidavit clearly gives the defendants far more information than is required by the certificate of good faith. Tennessee Code Annotated § 29-26-122 does not require the plaintiff to identify the expert with whom she has consulted, but only to swear that she has consulted with a qualified expert. She is not required to specify exactly in what way the defendants deviated from the relevant standard of care, or how that deviation caused the injury complained of, but only that there is a good faith basis to maintain the action. Thus, Plaintiff herein has supplied defendants with more information than is required by the statute.

The defendants argue that the affidavit is defective, however, because Dr. Eze does not specifically state that his opinion is based on information available from Mr. Hinkle's medical records. We do not deem this omission to be fatal because the record shows that Plaintiff was in possession of Mr. Hinkle's medical records months before Dr. Eze's affidavit was executed, and the affidavit demonstrates that Dr. Eze had knowledge about Mr. Hinkle's treatment and condition that he could not have obtained without being familiar with the medical records.

## C. The Extraordinary Cause Exception

The hospital and doctor assert that the plaintiff was required to show extraordinary cause for her failures to follow each and every technical requirement of the notice statutes. The defendants' argument is based upon their interpretation of statute.

The section establishing the notice requirements provides, "[t]he court has discretion to excuse compliance with this section only for extraordinary cause shown." Tenn. Code Ann. § 29-26-121 (b). The certificate of good faith requirement is at Tenn. Code Ann. § 29-26-115 and contains its own provisions regarding failure to comply. Subsection (a) states that "If the certificate is not filed with the complaint, the complaint shall be dismissed, as

---

[7](...continued)
border state, in a profession or specialty that would make that person's expert testimony relevant to the issues in the case, and that he or she had practiced that profession or specialty in one of those states during the year proceeding the injury. *See* Tenn. Code Ann. § 29-26-115(b). Once an expert demonstrates that he or she is qualified under the locality rule, that expert will be required to demonstrate that he is familiar with "the recognized standard of acceptable professional practice . . .in the community in which the defendant practices . . . or in a similar community." Tenn. Code Ann. § 29-26-115(a). *Shipley v. Williams*, 350 S.W.3d 527 (Tenn. 2011).

provided in subsection (c), absent . . . demonstrated extraordinary cause. Subsection (c) provides that the failure of a plaintiff to file a certificate shall, upon motion, "make the action subject to dismissal with prejudice." Tenn. Code Ann. § 29-26-115 (c). That same section gives the trial court discretion to grant an extension of time to file the certificate "for other good cause shown."[8] *Id*.

This court has, in fact, applied the extraordinary cause provision and has analyzed the trial court's decision to dismiss (or refuse to dismiss) under that provision using an abuse of discretion standard. However, we have also stated and applied other standards to questions of compliance with the notice and/or good faith certificate requirements. We will briefly review some of the holdings, beginning with two of the seminal cases arising out of the implementation of the statutory amendments and dealing with the notice and/or good faith certificate requirements: *Jenkins v. Marvel,* 683 F. Supp.2d 626 (E.D. Tenn. Jan.14, 2010), and *Howell v. Claiborne and Hughes Health Center*, M2009-01683-COA-R3-CV, 2010 WL 2359651 (Tenn. Ct. App. May 27, 2010).

Because of a dearth of Tennessee cases on the new statutory requirements, the *Jenkins* court used cases interpreting and applying a similar Texas statute to provide some guidance on the application of the Tennessee statutes.

> Texas state courts have held that the purpose of the notice requirement statute is "to facilitate discussion of the merits of a potential health care claim and thereby initiate amicable settlement negotiations." *Phillips v. Sharpstown General Hosp*., 664 S.W.2d 162, 168 (Tex.App.1983). "The purpose of the notice requirement in a health care liability case is to encourage pre-suit negotiations and settlement and to reduce litigation costs." *Hill v. Russell*, 247 S.W.3d 356, 360 (Tex. App.2008) (citing *De Checa v. Diagnostic Center Hosp., Inc.*, 852 S.W.2d 935, 938 (Tex.1993)). The impetus for this law started when the Texas legislature created a commission to review the state's medical malpractice laws. *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 937 (Tex.1983). This commission wanted to create a process that would "facilitate the early identification of unmeritorious suits." *Id.* One of the commission's recommendations was that "a period of time prior to the filing of suit should be set aside for discussion between the parties, in order that an amicable agreement might be reached without the necessity for formal action." *Id*.

---

[8]This court has interpreted these two provisions to providing that failure to file a certificate with the complaint does not automatically result in dismissal. *Robles v. Vanderbilt University Medical Center*, 2011 WL 1532069 (Tenn. Ct. App. April 19, 2011) (perm. app. denied Aug. 25, 2011).

*Jenkins v. Marvel,* 683 F. Supp.2d at 638.

The *Jenkins* court also referred to some documents somewhat relevant to legislative purpose in Tennessee and concluded:

It appears, therefore, that the Tennessee statute was intended for purposes similar to those contemplated when the Texas statute was created—to provide notice to potential parties and to facilitate early resolution of cases through settlement.

*Id*. at 639. We have consistently described the purposes of the Tennessee statutes the same way.

In *Jenkins*, the plaintiff refiled (under the savings statute) her medical malpractice complaint 17 days after the effective date of the notice requirements. She was unable, therefore, to provide 60 days prior notice, and provided notice when the complaint was filed. The *Jenkins* court held that "the notice requirement has been satisfied in this case and there was no need for Plaintiff to provide the 60-day statutory notice before refiling this case." The court found that the defendants had actual notice when the initial suit was filed, fifteen months before the action was refiled, and had had time to evaluate the plaintiff's claims and attempt resolution of the matter. The court found that the goals of the statutory notice provision had been satisfied.[9]

Thus, the *Jenkins* court simply found there was notice and, consequently, the requirements were met. It did not consider the "extraordinary cause" provision because there was no reason to examine the cause of any noncompliance since there was actual compliance.

In *Howell v. Claiborne and Hughes Health Center, supra,* the action was also initiated before the enactment of the 60 day notice provision, was then voluntarily non-suited, and was refiled five days after the enactment of the statutory amendment. The complaint did not include the required statement, Tenn. Code Ann. § 29-26-121(b), that notice had been given 60 days before the complaint was filed, because it had not been possible to provide such notice.

Finding the factual situations almost identical, the *Howell* court relied upon the

_____

[9]Plaintiff did file a certificate of good faith, and the court found the goal of that requirement had also been met.

-14-

*Jenkins* opinion, specifically found the reasoning of *Jenkins* sound, and stated it would apply that analysis. 2010 WL 2359651 at *16. Unlike the *Jenkins* court, however, the *Howell* court referred to the "extraordinary cause" exception, noting that the legislature had seen the need to create an exception so that the notice requirement "would not be an absolute bar to all claims whatsoever" that did not comply. *Id*. The court stated that we review the trial court's decision to excuse or not excuse compliance with the notice requirements under an abuse of discretion standard. *Id*.

Nonetheless, there was no holding that the trial court has exceeded its discretion. Instead, the *Howell* court's holding was that the trial court "erred" in not excusing compliance, stating that in the "unique circumstances" the trial court should have excused compliance with the deadlines imposed by the notice provisions. *Id*., at *17. This court's decision was based upon its conclusion that all the purposes of the amendments had been met because: (1) the defendants had notice of the plaintiff's claim over a year before the action was refiled, thus having had ample time to investigate and pursue settlement of the claim, and (2) a certificate of good faith was filed with the complaint. *Id*.

In a recent opinion, this court discussed the *Howell and Jenkins* cases and stated:

the legislative purposes of the statutory provisions were accomplished in both cases where Defendants had actual notice of the claims asserted against them, ample opportunity to settle the claims, and the merits of the claims had been demonstrated [by the filing of a certificate of good faith].

*Myers v. AMISUB (SFH), Inc*., 2011 WL 664753, at *8 (Tenn. Ct. App. Feb. 24, 2011) (perm. app. granted Aug. 23, 2011). In both these early cases, the court determined that the earlier filings were sufficient to provide the defendants with timely and effective notice of the claims against them and, thus, to satisfy the purposes of the amendments to the Medical Malpractice Act.[10] Consequently, each court held that dismissal of the complaints was not warranted.

The defendants herein rely heavily on the case of *DePue v. Schroeder*, E2010-00504-COA-R9-CV, 2011 WL 538865 (Tenn. Ct. App. Feb. 15, 2011) (McClarty, J., dissenting) (perm. app. denied Aug. 31, 2011). In that case the plaintiffs filed their complaint 53 days after giving the statutory notice to the defendant healthcare providers. The several defendants filed motions to dismiss and for summary judgment because the requisite

_____

[10]This court noted with approval that even though the plaintiffs in the two cited cases did not follow the notice procedures set out in Tenn. Code Ann. § 29-26-121, they did file a certificate of good faith with their new complaints, evidencing sufficient merit in the complaint.

notice was not given at least 60 days before the filing of the complaint.

The plaintiffs contended that they had substantially complied with the statute and that no prejudice resulted from the premature filing of the complaint, which they explained resulted from attorney oversight. The trial court agreed and denied the defendants' motions. This court reversed.

The *DePue* majority opinion quoted extensively from *Howell*, but distinguished *Howell* and *Jenkins* because in those cases the defendants had received notice at least a year before the refiling of the complaints. The majority stated that "In this case, . . . the defendants still did not have the requisite notice for 60 days prior to the filing of the complaint." 2011 WL 538865, at *7. The reason given for plaintiff filing her complaint 7 days early was attorney oversight and concern over statute of limitations issues. This court rejected those explanations as not constituting "extraordinary cause," which the court found was required in order "to excuse compliance with the notice statute." *Id*., at *8.

The *DePue* majority stated that it was required to review the trial court's decision to deny dismissal under an abuse of discretion standard. It further determined that the trial court had, indeed, abused its discretion by applying an incorrect legal standard. The court explained:

> Upon review of the Trial Court's Order, it is clear that the Trial Court applied an incorrect legal standard, as the Trial Court based its decision to grant the waiver on its finding that there was "substantial compliance" with the statute and "no prejudice resulted to defendants" from the premature filing of the complaint. This is improper based on the plain language of the statute, which requires a showing of "extraordinary cause", something obviously much greater than "substantial compliance" or lack of prejudice, as shown by the cases herein cited. The Trial Court's decision was an abuse of discretion and is reversed. Plaintiffs' counsel's action in filing the complaint before expiration of the required notice period was not shown to be the result of any "extraordinary cause" other than pure oversight/misunderstanding on her part.

*Id*. The dissenting judge stated:

> The trial court excused full compliance with the statutory provision, finding that there was substantial compliance and no prejudice resulted from the premature filing of the complaint. Thus, the trial court exercised its discretionary power granted in Tenn. Code Ann. § 29–26–121(b) to waive the deficiency in the notice provision. . . .

By so strictly applying Tenn. Code Ann. § 29–26–121 as the majority has done, this court is requiring the dismissal of an action certified to have been taken in good faith involving claims with some merit. The law in this state favors resolution of all disputes on the merits. The plaintiffs complied with the "spirit" of the statute and gave the defendants notice and some amount of time to respond, try to settle, or otherwise investigate the claims. Viewing this case through a more liberal filter, I do not find that the trial court abused its discretion because it did not "reach[ ] a decision which is against logic or [use] reasoning that caused an injustice to the party complaining." *See Howell*, 2010 WL 2539651, at *16.

2011 WL 538865, at *9-10 (McClarty, J. dissenting).

In two other cases involving actions refiled, under the savings statute, well after the effective date of the notice and certificate requirements, this court applied the extraordinary cause exception provision to failures to file a certificate of good faith and/or to provide notice. In *Cude v. Herren*, 2011 WL 4436128 (Tenn. Ct. App. Sept. 26, 2011), this court found that the trial court had not abused its discretion in refusing to find extraordinary cause, rejecting the plaintiff's contention that her substantial compliance with the statutes and alleged lack of prejudice to the Defendant constituted extraordinary cause to waive the requirement. In that case, absolutely no notice was given, and no certificate of good faith was filed, more than seven months after the effective date of the 2009 additions to the statutory requirements.

In *Myers v. AMISUB (SFH), Inc.*, 2011 WL 664753, this court reversed the trial court's denial of the defendants' motion to dismiss a refiled action where no certificate of good faith was filed and no 60-day notice was given. The appellate court determined that a trial court has discretion to excuse compliance with the statutory requirements only when extraordinary cause is demonstrated. *Id*. at *8. "[I]t was not within the discretion of the trial court to waive the requisites of [the notice and certificate of good faith statutes]." *Id*., at *9

The *Myers* court distinguished *Howell* and *Jenkins* because the defendants in those cases had received actual notice, the complaints were filed only a few days after the notice requirements went into effect, and certificates of good faith were filed with the refiled complaints. *Id*. The court concluded that the "unique circumstances" present in *Howell* and J*enkins* were not present in *Myers*.

In another case, this court affirmed the dismissal of a refiled action for failure to file a certificate of good faith and held that the certificate of good faith requirement applied to the plaintiffs' refiled action and stated that "absent extraordinary cause, failure to comply

with these requirements merited dismissal of the case." *Crawford v. Kavanaugh*, 2011 WL 5829602 (Tenn. Ct. App. Nov. 21, 2011), *Id*., at \*4. However, the primary issue in that case was whether the new requirements applied to the refiled action, and the "extraordinary cause" exception was not discussed or applied. The trial court had dismissed the complaint pursuant to a motion to dismiss, and this court reviewed that decision under the *de novo* standard, not under an abuse of discretion standard.

Thus, to summarize, this court has both affirmed and reversed trial court decisions regarding the effect of failure to comply with the notice and certificate requirements. We have generally applied the extraordinary cause exception and have frequently used the abuse of discretion standard in reviewing the trial court's decision on that exception. However, we have used other analyses or standards, as described above. *See also*, *Barnett v. Elite Sports Medicine*, 2010 WL 5289669, at \*3 n. 6 (Tenn. Ct. App. Dec. 17, 2010) (stating "[b]ecause the 'extraordinary cause' exception is part of the statute, . . . we review the court's holding as an application of the facts to the law," specifically rejecting a standard based on the trial court's discretion).

The cases where this court has found no extraordinary cause for noncompliance have, with one exception, involved the failure to file any notice and/or a certificate of good faith of any kind. We think in that situation, total failure to meet the basic requirements, the extraordinary cause exception applies as the only way to avoid dismissal.

However, in the case before us, Ms. Hinkle gave timely notice of her claim and filed an expert's affidavit to meet the requirement that a medical malpractice action be supported by expert opinion. The question of whether those actions met the requirements of the statute involves applying the statute to the facts of this case. Additionally, Tenn. Code Ann. §29-26-121(b) requires the plaintiff to provide "such evidence of compliance as the court may require to determine if the provisions of this section have been met," referring to the 60 day notice requirement in subsection (a). Accordingly, we review the trial court's decision on compliance as a question of law. *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002).

Construction of a statute and its application to the facts of a case are issues of law. *BellSouth Advertising & Pub. Corp. v. Chumley*, 308 S.W.3d 350 (Tenn. Ct. App. 2009); *Patterson v. Tennessee Dept. of Labor and Workforce Dev.*, 60 S.W.3d 60, 62 (Tenn.2001) (citing *Beare Co. v. Tennessee Dept. of Revenue*, 858 S.W.2d 906, 907 (Tenn.1993)). Issues involving construction of a statute and its application to the facts of a case are questions of law. *Memphis Publ'g Co. v. Cherokee Children & Family Services, Inc.*, 87 S.W.3d 67,74 (Tenn. 2002).

The review of a question of law is de novo, with no presumption of correctness afforded to the conclusions of the court below. *State v. McKnight*, 51 S.W.3d 559, 562 (Tenn.2001) (citing *Comdata Network, Inc. v. Tennessee Dept. of Revenue*, 852 S.W.2d 223, 224 (Tenn.1993); *Tennessee Farmers Mut. Ins. Co. v. Witt*, 857 S.W.2d 26, 29 (Tenn.1993). Therefore, we review questions of the application of statute de novo and reach our own independent conclusions. *Lance v. York*, 359 S.W.3d 197, 201 (Tenn. Ct. App.) (citing *King v. Pope*, 91 S.W.3d at 318).

Applying the statutes regarding notice and certificate of good faith to the facts of this case, we find that Ms. Hinkle complied with both statutory requirements. Thus, we reach a conclusion similar to that of the *Jenkins* court. Because the requirements were met in this case, the question of whether a failure to meet the requirements can be justified on the basis of "extraordinary cause" is simply not relevant. Consequently, there is no need or basis to apply the "extraordinary cause" provision.

We cannot conclude that the legislature intended that each and every technical, but not material, deviation from the language of the statute could only be excused or corrected by a showing of extraordinary cause. Dismissal of a meritorious complaint even where the

-19-

defendant had actual notice and allowing a defendant to participate in discovery and negotiations while waiting to raise technical objections is not consistent with the purposes of the statutory requirements for filing medical malpractice lawsuits.

The defendants' argument elevates form over substance and conflates means with ends. The aim of Tenn. Code Ann. § 29-26-121 is to make sure that prospective defendants receive adequate and timely notice of possible claims against them. Similarly, the certificate of good faith requirement is designed to eliminate lawsuits where the claims have not been vetted by an expert.

If we were to accept the defendants' argument at face value, we would be forced to conclude that any deviation from the strict letter of Tenn. Code Ann. § 29-26-121, no matter how small, would compel the courts to dismiss any medical malpractice claim asserted, no matter how meritorious. This would negate the strong preference of our law to resolve claims on their merits whenever possible. *See Henley v. Cobb*, 916 S.W.2d 915, 916 (Tenn. 1996); *Townes v. Sunbeam Oster Co., Inc.*, 50 S.W.3d 446, 450 (Tenn. Ct. App. 2001).

We reverse the trial court's dismissal of Ms. Hinkle's medical malpractice claims. We also reverse the related claims of loss of consortium and failure to train or supervise.

## V.  OTHER CLAIMS

### A.  Failure to Obtain Informed Consent

The complaint in this case asserted separate claims for failure to obtain informed consent and for battery against both defendants. Plaintiff alleged "[t]hat Kindred Hospital and Dr. Nguyen failed to seek consent from the Decedent or his representative prior to the procedure," and "[t]hat Kindred Hospital and Dr. Nguyen failed to warn and or inform the Decedent or his representative of the adverse effects of BMS tube use, such as rectal perforation, loss of sphincter tone, infection, pressure necrosis, and other adverse effects."

Claims for failure to obtain informed consent and for battery are closely related. Both are based on the fundamental right to body integrity possessed by all competent adults. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Shadrick v. Coker,* 963 S.W.2d 726, 731 (Tenn. 1998). In accordance with that right,

> the courts have recognized that patients may recover damages from physicians who perform non-emergency medical procedures without their consent. There are four premises underlying these claims. The first is that the decision to undergo a medical procedure rests with the patient who, if competent, retains

-20-

the right to exercise control over his or her own body. The second is that a physician has no right to subject a competent patient to a medical procedure without the patient's consent. The third is that a patient will ordinarily be unable to make an intelligent decision whether to consent to a procedure without a clear and adequate explanation by the physician of the nature, benefits, and risks of the contemplated procedure and of the other treatment alternatives available to the patient. Following up on the third premise, the fourth is that physicians have a duty, before performing a procedure, to provide an adequate explanation and to obtain the patient's consent.

*Church v. Perales*, 39 S.W.3d 149, 158-59 (Tenn. Ct. App. 2000).

A claim for lack of informed consent arises when a patient consents to a procedure, but asserts that the doctor failed to inform him or her of all the risks inherent in the procedure. It has been said that a claim for informed consent ". . . is predicated upon a theory of battery." *Bryant v. HCA Health Services*, 15 S.W.3d 804, 808 (Tenn. 2000) (citing *Blanchard v. Kellum,* 975 S.W.2d 522, 524 (Tenn. 1998)). That is, when a medical professional fails to fully inform a patient about a procedure he intends to perform and does not convey the appropriate information, he can be held liable for the subsequent invasion of the patient's right to bodily integrity.

When a doctor or other medical professional performs a procedure that a patient or a patient's legal representative has not even authorized or consented to, then the claim against that party is simply referred to as battery, or as a "medical battery." *Blanchard v. Kellum*, 975 S.W.2d at 524. As a practical matter, the difference between a claim for failure to obtain informed consent and a claim for medical battery comes down to the type of proof required to establish each claim. But regardless of the label, liability can attach for any injuries arising from a treatment or procedure performed without adequate consent, whether or not those injuries resulted from negligent performance of that procedure. *Shadrick v. Coker,* 963 S.W.2d at 732; *Hawk v. Chattanooga Orthopaedic Group, P.C.,* 45 S.W.3d 24, 32 (Tenn. Ct. App. 2000); *Church v. Perales*, 39 S.W.3d at 159.

When the claim before the court is based on failure to obtain informed consent, Tenn. Code Ann. § 29-26-118 of the Medical Malpractice Act requires the plaintiff to prove by expert testimony the standard of acceptable professional practice for giving such consent in regard to the procedure to be employed. *Cardwell v. Bechtol*, 724 S.W.2d 739, 750 (Tenn. 1987). The final order in this case did not specifically reference the informed consent claim against Dr. Nguyen, but included it by implication with all the claims that were dismissed without prejudice.

Dr. Eze's expert affidavit indicates that a treating physician is required to furnish the patient with appropriate information about the risks of the BMS procedure before ordering or performing the procedure and that Dr. Nguyen's failure to do so was a violation of the standard of professional practice. Thus, Plaintiff has stated a claim for failure to obtain informed consent and has supported it with the type of evidence that is necessary to prove such a claim. As we noted above, a motion to dismiss for failure to state a claim under Tenn. R. Civ. P. 12.02(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. Thus, we reverse the trial court and order that the claim against Dr. Nguyen for failure to obtain adequate informed consent be allowed to stand.

The matter stands on a different footing with regard to the informed consent claim against Kindred Hospital. The hospital argued that it had no legal duty to obtain informed consent from Mr. Hinkle because that duty lay with Dr. Nguyen alone. The trial court agreed and dismissed the informed consent claim against the hospital with prejudice. The trial court relied on the Tennessee Supreme Court's opinion in the case of *Bryant v. HCA Health Services of Tenn.*, 15 S.W.3d at 804. In that case, a hospital patient who underwent two spinal surgeries that worsened rather than improved her condition filed a malpractice suit against the operating surgeon and the hospital. Among other things, she claimed that she was not fully informed of the dangers of the procedure she underwent. The Court held that the hospital had no duty to obtain the patient's informed consent for surgery that was ordered and performed in the hospital by a non-employee physician.

The present case involves a non-surgical procedure, but we believe the same principle applies. The record shows that Dr. Nguyen was not an employee of the hospital, but that he was the one who gave the order to place the BMS device in the patient's rectum. There is no suggestion that the hospital was involved in making that decision. While hospital employees may have been the ones to actually carry out the doctor's orders, they had neither the capacity nor the duty to obtain informed consent from the patient. We therefore affirm the trial court's dismissal of Plaintiff's claim for lack of informed consent against the defendant hospital.

## B. Medical Battery

As we noted above, expert proof is required to establish that a medical practitioner failed to give informed consent to a patient. *See* Tenn. Code Ann. § 29-26-118. But when no consent at all is given, the claim is one for medical battery. Expert proof is not required to establish such a claim, because the patient's knowledge and awareness is the focus of a claim for medical battery. *Hensley v. Scokin,* 148 S.W.3d 352, 356 (Tenn. Ct. App. 2003). "The primary consideration in a medical battery case is simply whether the patient knew of

and authorized a procedure. This determination does not require the testimony of an expert witness." *Blanchard v. Kellum,* 975 S.W.2d at 524.[11]

The complaint in the present case alleges that the patient tried to refuse the BMS procedure and that it was performed over his objections and over the objections of his teenage son. The defendants suggested that the consent form signed by the patient's wife after the procedure was performed furnished the consent necessary to negate her claim. But they presented no evidence at all that the patient lacked the capacity to consent to or refuse the procedure or that Plaintiff was authorized to consent on the patient's behalf.

Since the hospital's employees performed the BMS procedure, the the trial court did not err in declining to grant it summary judgment on the medical battery claim. The only remaining question, therefore, is whether the medical battery claim applies to Dr. Nguyen. The trial court dismissed that claim against him with prejudice, reasoning that there were no allegations that he had actually touched Mr. Hinkle at any time. Plaintiff does not allege that Dr. Nguyen actually performed the BMS procedure. She argues, however, that the trial court erred because it is undisputed that Dr. Nguyen ordered the procedure from which the claim of battery arose.

Plaintiff urges us to adopt a broad understanding of medical battery, in accordance with the following: "A battery necessarily requires an unpermitted touching of the plaintiff by the defendant or by some object set in motion by the defendant." *Cary v. Arrowsmith,* 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989)(citing 6A C.J.S. *Assault and Battery* § 8(b) (1975)). Plaintiff argues that although Dr. Nguyen may not have touched the patient, his orders directly set into motion the battery complained of.

We note that the examples of indirect batteries set out in the section of C.J.S. cited in *Cary v. Arrowsmith* are "throwing some object at a person," and "the pointing of a gun and discharging the same with resultant injury," neither of which are pertinent to the case before us. Further, we have been unable to find any Tennessee cases in which an appellate court has held a defendant liable for medical battery when the defendant did not personally

[11]In the recent of case *Barnett v. Elite Sports Medicine*, M2010-00619-COA-R3-CV, 2010 WL 5289669 (Tenn. Ct. App. Dec. 17, 2010) (no Tenn. R. App. P. 11 application filed), this court was faced with the question whether the filing of a certificate of good faith applies to a claim for medical battery. We noted that Tenn. Code Ann. § 29-26-122(a) states that the certificate is required "[i]n any medical malpractice action in which expert testimony is required by § 29-26-115." Since expert testimony is not required to sustain a claim for medical battery, we concluded that the certificate need not be filed to support such claims. *Barnett v. Elite Sports Medicine,* 2010 WL 5289669 at *5.

perform the procedure from which the battery claim arose.[12]  We are reluctant to expand the definition of a medical battery when it appears that Plaintiff has adequate legal remedies against both defendants for the injuries suffered by the patient.

## VI.

We reverse the trial court's dismissal of the plaintiff's claims of medical malpractice and loss of consortium against the two defendants, its dismissal of the claim against the defendant hospital for failure to properly supervise or train its employees, and its dismissal of the claim against Dr. Nguyen for failure to obtain informed consent.  We affirm its decision not to dismiss the battery claim against Kindred Hospital on summary judgment, and its decision to dismiss the battery claim against Dr. Nguyen under Rule 12.02(6).  We remand this case to the Circuit Court of Davidson County for further proceedings.  Tax the costs on appeal equally between the appellees, Kindred Hospital and Dr. Tuan Quoc Nguyen.

_____
PATRICIA J. COTTRELL, JUDGE

---

[12]The *Cary v. Arrowsmith* case involved corrective surgery performed by the defendant opthalmologist on the plaintiff's eyes.